**EXHIBIT 4**

*To be argued by*
*Roy W. Vasile, Esq.*
Time requested: 10 minutes

# Supreme Court
## State of New York
### Appellate Division – Second Department

LANCER INSURANCE COMPANY,

*Plaintiff-Respondent,*

*against*

2003-07593

T.F.D. BUS CO., INC., THOMAS E. LYONS and CELESTE M. LYONS,

*Defendants-Appellants,*

*and*

MICHAEL A. THOMAS,

*Defendant.*

## BRIEF FOR PLAINTIFF-RESPONDENT

CURTIS, VASILE, DEVINE &
MCELHENNY
*Attorneys for Plaintiff-Respondent*
*Lancer Insurance Company*
2174 Hewlett Avenue, P.O. Box 801
Merrick, NY 11566
(516) 623-1111

Nassau County Clerk's Index No. 7146/99

THE REPORTER COMPANY, *Printers and Publishers, Inc.*
30 Vesey Street, New York, NY 10007—212-732-6978
(7241 - 2004)
Reproduced on Recycled Paper

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES                                              i

PRELIMINARY STATEMENT................................................    1

QUESTIONS PRESENTED...........................................    2

COUNTER STATEMENT OF FACTS......................................    4

POINT I:     LANCER HAS NEVER ALTERED ITS
             EXPLANATION OF THE EVENTS WHICH
             INFLUENCED ITS COVERAGE DETERMINATIONS;
             APPELLANTS' ACCUSATIONS OF FRAUD,
             DECEIT AND MISCONDUCT ARE BASELESS.....   20

POINT II:    THE TRIAL COURT'S RULINGS DID NOT
             PREJUDICE THE APPELLANTS IN ANY WAY;
             APPELLANTS CANNOT COMPLAIN THAT THEY
             WERE DEPRIVED OF A FAIR TRIAL....................   28

POINT III:   THE APPELLANTS MAY NOT REARGUE ISSUES
             WHICH HAD BEEN RESOLVED ON THE PRIOR
             APPEAL.................................................................   39

CONCLUSION.............................................................................   43

CERTIFICATE OF COMPLIANCE.............................................   ii

# TABLE OF AUTHORITIES

Page No.

*Altman v. Alpha Obstetrics and Gynecology, P.C.,*
255 A.D.2d 276, 679 N..Y.S.2d 642 (2d Dept. 1998)                25

*Alvarez v. New York City Housing Authority,* 295 A.D.2d
225, 744 N.Y.S.2d 25 (1st Dept. 2002)                            25

*Ateser v. Becker,* 272 A.D.2d 219, 708 N.Y.S.2d 76
(1st Dept. 2000)                                                 38

*Berlinger v. Lisi,* 288 A.D.2d 523, 731 N.Y.S.2d 916
(3d Dept. 2001)                                                  22

*Boutin v. Aetna Casualty & Surety Company,* 264 A.D.2d 434,
694 N.Y.S.2d 134 (2d Dept. 1999)                                 35

*Brown v. Stark,* 205 A.D.2d 725, 613 N.Y.S.2d 705 (2d Dept.
1994)                                                            36

*City of Albany Industrial Development Agency v. Garg,*
250 A.D.2d 991, 672 N.Y.S.2d 541 (3d Dept. 1998)                 26

*Cohen v. Hallmark Cards, Inc.,* 45 N.Y.2d 493, 410
N.Y.S.2d 282  (1978)                                             4

*Engel v. Eichler,* 300 A.D.2d 622, 753 N.Y.S.2d 109
(2d Dept. 2002)                                                  42

*Felder v. Wank,* 227 A.D.2d 442, 642 N.Y.S.2d 695
(2d Dept. 1996)                                                  32

*First Financial Insurance Company v. Jetco Contracting Corp.,*
1 N.Y.3d 64, 769 N.Y.S.2d 459 (2003)                            29

*Giannetto v. General Exchange Insurance Corporation,*
10 A.D.2d 442, 200 N.Y.S.2d 238 (4th Dept. 1960)               30

*Hartford Insurance Company v. County of Nassau*, 46 N.Y.2d 1028, 416 N.Y.S.2d 539 (1979)                                      29

*Knepka v. Tallman*, 278 A.D.2d 811, 718 N.Y.S.2d 541 (4th Dept. 2000)                                                         25

*Kopman v. Blue Ridge Insurance Company*, 296 A.D.2d 479, 745 N.Y.S.2d 472 (2d Dept. 2002)                                     35

*Lancer Insurance Company v. T.F.D. Bus Co., Inc.*, 286 A.D.2d 375, 728 N.Y.S.2d 709 (2d Dept. 2001)                           29

*Levitt v. County of Suffolk*, 166 A.D.2d 421, 560 N.Y.S.2d 487 (2d Dept. 1990), *lv. dismissed 77 N.Y.2d 834, 566 N.Y.S.2d 588*   26

*Martin v. Manhattan and Bronx Surface Transit Operating Authority*, 198 A.D.2d 160, 604 N.Y.S.2d 65 (1st Dept. 1993)          19

*Matter of Allcity Insurance Company (Jiminez)*, 78 N.Y.2d 1054, 576 N.Y.S.2d 87 (1991)                                        29

*Mount Vernon Housing Authority v. Public Service Mutual Insurance Company*, 267 A.D.2d 285, 699 N.Y.S.2d 905 (2d Dept. 1999)   33

*Nationwide Mutual Insurance Company v. Graham*, 275 A.D.2d 1012, 713 N.Y.S.2d 602 (4th Dept. 2000)                            36

*Nicastro v. Park*, 113 A.D.2d 129, 495 N.Y.S.2d 184 (2d Dept. 1985)                                                           31

*Ometz Realty Corp. v. Vanette Auto Supplies, Inc.*, 262 A.D.2d 539, 691 N.Y.S.2d 797 (2d Dept. 1999)                          40

*Prunty v. Keltie's Bum Steer*, 163 A.D.2d 595, 559 N.Y.S.2d 354 (2d Dept. 1990)                                               24

*Psihogios v. Stavropoulos*, 269 A.D.2d 295, 703 N.Y.S.2d 462 (1st Dept. 2000)                                                 25

Ramee v. Weathervane Seafoods, 273 A.D.2d 768, 710 N.Y.S.2d
165 (3d Dept. 2000)                                                             25

Ringel v. Blue Ridge Insurance Company, 293 A.D.2d 460, 740
N.Y.S.2d 109 (2d Dept. 2002)                                                    42

Sagorsky v. Malyon, 307 N.Y.2d 584, 123 N.E.2d 79                               4

Salazar v. Fisher, 147 A.D.2d 470, 537 N.Y.S.2d 306 (2d Dept.
1989)                                                                           26

Sanchez v. City of New York, 299 A.D.2d 475, 749 N.Y.S.2d
744 (2d Dept. 2002)                                                             36

Solow v. Domestic Stone Erectors, Inc., 303 A.D.2d 283,
757 N.Y.S.2d 256 (1st Dept. 2003)                                               25

Spiegel v. 1065 Park Avenue Corporation, 305 A.D.2d 204,
759 N.Y.S.2d 461 (1st Dept. 2003)                                               33

Uptown Whole Foods, Inc. v. Liberty Mutual Insurance
Company, 302 A.D.2d 592, 756 N.Y.S.2d 251 (2d Dept. 2003)                       33

Weinstock v. Handler, 251 A.D.2d 184, 674 N.Y.S.2d 368
(1st Dept. 1998)                                                                25

Wendy v. Spector, 305 A.D.2d 403, 758 N.Y.S.2d 526
(2d Dept. 2003)                                                                 40

## PRELIMINARY STATEMENT

Advocacy should be zealous, but not pernicious. It is one thing to press a client's cause with myopic loyalty; it is quite another to defile integrity in the process.

The three appeals filed in this case have crossed the line. The citations to the record are, to be kind, less than fair; and the accusations of fraud and deceit are at best demeaning. It is truly unfortunate that the issues in dispute could not have been argued with at least a semblance of honor.

The appellants generally brief the same lines of argument. There are issues raised here that have already been determined by this court on a previous appeal; and the trial court is criticized for giving the appellants *almost* all that they wanted. The justification for this reargument and criticism is founded on a thinly veiled accusation of misconduct which, if the appellants are to be believed, was known to them for almost three years, but first raised by them in the context of this appeal.

The accusation of misconduct is baseless, both in fact and under prevailing law. Hence, the determinations reached by this court as a result of the previous appellate process is the law of this case, and there is no reason to disturb the earlier rulings. Finally, if any error was committed by the trial court, it was error which inured to the appellants' favor.

The judgment of the trial court should be affirmed in all respects.

## QUESTIONS PRESENTED

1.    Whether judgment was properly granted in favor of an insurer in a declaratory

judgment action brought by that insurer to validate the propriety its disclaimer:  where

the insureds were involved in an accident in 1989 but were allegedly served with legal

process in 1992, six months after the expiration of the applicable statute of limitations;

where the plaintiffs in that action had obtained a default judgment in 1992 but did not

proceed to inquest until 1997;  where the insured's attorney had moved for vacatur of

the default on jurisdictional grounds and for dismissal of the action on the basis, *inter*

*alia*, of a statute of limitations defense;  where the application was initially granted but

thereafter, upon reargument, was reinstated pending a traverse hearing on the question

of service;  where the insureds provided sworn affidavits to the insurer denying that

they were served with process or that they were aware of the commencement of the

action until enforcement proceedings were brought in September of 1997;  where both

the insurer's attorney and the insureds' attorney each understood and agreed that the

issue of the insureds' breach of the requirement of "immediate" notification of any

legal action depended on the resolution of the jurisdictional issue;  where they

established a working arrangement which deferred discussion of the coverage issues

until after the insureds were able to validate their attestation that they had not

breached any condition of the policy; where despite the insistence to the contrary, the court ruled at the traverse hearing that service was effectuated in 1992; but where the insurer's attorney and the insureds' new attorney, in reaffirming the earlier understanding, agreed to withhold a final and formal decision on coverage until the parties had an opportunity to discuss appeals from both this determination as well as the earlier decision on reargument; and where the insurer issued its disclaimer promptly upon learning in late January, 1999, for the first time, that no appeals were being pursued by the insureds despite their prior representations and that, effectively, the insureds had now conceded their breach of the policy conditions after months of sworn and vigorous denial.

This Question should be answered in the affirmative.


2.    Whether a declaration of no coverage issued by the court following a jury verdict in a declaratory judgment case was appropriate, where the credible evidence established that the insurer disclaimed promptly upon learning the critical fact that despite months of sworn and vigorous denial, the insureds had indeed breached a condition to coverage.

This question should be answered in the affirmative.


3

# COUNTER STATEMENT OF FACTS

While appellants cannot be faulted for attempting to present their case as favorably as possible, the grossly one-sided presentation of the trial evidence requires balance. This is particularly compelling where the prevailing party at trial is entitled to have the facts reviewed in their most favorable light. *See Cohen v. Hallmark Cards, Inc.,* 45 N.Y.2d 493, 410 N.Y.S.2d 282 (1978); *Sagorsky v. Malyon,* 307 N.Y.2d 584, 123 N.E.2d 79.

This declaratory judgment dispute has its genesis in a vehicular accident which took place on February 14, 1989. R. 503. Although the accident and certain minor claims were reported to Lancer Insurance by its insured, TFD Bus Co., Inc. (T. 158-159), no further information concerning the case was revealed to Lancer until September of 1997. R. 446.

At that time, Lancer was advised that a lawsuit had been commenced against TFD Bus and Michael Thomas, its driver-employee, approximately six months after the statute of limitations had expired, that a default judgment on liability had been obtained against both TFD and Thomas back in 1992, that an inquest on damages had been conducted in 1997, and that the plaintiffs, Thomas and Celeste Lyons, had commenced enforcement proceedings against TFD's bank accounts. T. 148-151.

4

Lancer was also advised that an order to show cause had been submitted to the court, seeking vacatur of the default and dismissal of the action. T. 148. The application was supported by sworn attestations of both TFD Bus and Michael Thomas that neither of them had any idea that an action had been brought or that they had defaulted in appearing. T. 149; T. 287; R. 247-251.

Lancer's policy with TFD required "immediate" notification of any legal action; however, if TFD and Thomas were unaware of the Lyons lawsuit, this contractual obligation would not have been triggered. T. 185. Counsel for TFD and Thomas acknowledged the predicament in which his clients found themselves: any hope of securing insurance coverage for a five-year-old default, particularly where a dispositive defense was available (T. 175), depended on the validation of the insureds' sworn denial of knowledge of the existence of the lawsuit. T. 292-293; T. 296-298.

Lancer confirmed its position with respect to this issue in written correspondence to the insureds' attorney. R. 446-451. The insureds were warned that they might well have breached the pertinent policy conditions, but that Lancer accepted the assertion that they "expressly and unequivocally" denied knowledge of the lawsuit. *Id.*

Since Lancer's introduction to the situation occurred only after the insureds' attorney had prepared and filed the emergency application, the only purpose of counsel's initial contact with Lancer was to request certain background information and some investigative assistance.  T. 148.  Hence, the accommodation between Lancer and the insureds' attorney, confirmed through Lancer's "reservation of rights" correspondence,  permitted the insurer to offer the requested assistance while preserving its ultimate coverage defense.  T. 172, T. 237.

The application to vacate was initially successful:  the court vacated the judgment on default and dismissed the untimely action.  T. 178;  T. 301-303.  In so doing, the court rejected plaintiffs' counsel's "tolling" arguments in the face of his concession that the action was knowingly commenced after the statute of limitations had expired.  R. 670-672.

With the exception of some "housekeeping" with respect to one of the insureds (T. 178), there was now no judgment, no default, indeed no action, for Lancer to "defend".  Lancer thus invited the insureds' attorney to submit his bill for the legal services he had rendered, once the final "housekeeping" issues were resolved.  T. 178-179.

Some five months susequently, the action was reinstated upon reargument (T. 186;  T. 304).  The insureds' attorney recommended, and Lancer agreed, that an

appeal should be pursued.  T. 190-191;  T. 194;  T. 306-307.  Lancer offered to undertake the appellate process (R. 609), but the insureds' attorney's subsequent communications indicated that the appeal was being handled directly by him.  T. 197; T. 308.

In accordance with the order granting reargument, a traverse hearing was eventually held in November of 1998.  T. 199.  Despite its sworn attestation to the contrary, TFD Bus was found to have been served properly back in 1992 (T. 200);  the court thus ruled that a hearing must be held on the question of damages sustained by reason of the now-confirmed default.  R. 285-286.

It was at this point that TFD Bus asked Lancer to substitute counsel in connection with its defense of the damages assessment, but by agreement, a final decision on this request was deferred.  T. 220-221.  Lancer was specifically advised that its insureds continued to deny knowledge of the action and would seek to overturn the finding to the contrary.  T. 203-205.  Lancer was also led to believe that the insureds were still actively contesting the reinstatement of the case.  T. 205.  Success on that appeal would have obviated the need for *any* further activities, much less those undertaken to prepare for the damages hearing.  T. 220-221.

Sometime after January 20, 1999 (T. 449), Lancer learned that the insureds had not pursued either of the two appeals relating to the viability of the lawsuit brought

against them or their knowledge of its existence. T. 210. The revelation of this additional information was the defining moment in the case. Essentially, despite months of strenuous denial, the insureds' abandonment of the appeals articulated their acknowledgment that they had indeed been served with legal process back in 1992, and that they failed to notify Lancer of the lawsuit until after it was too late to do anything about it. T. 210-211. Lancer formally disclaimed coverage to both TFD Bus and Thomas as soon as it learned that they had effectively conceded their breach of the policy conditions in this regard. *Id.*; R. 442-444. In separate correspondence, Lancer also notified Thomas and Celeste Lyons of the reasons for the disclaimer. R. 441.

Appellants had previously moved for summary judgment, seeking a declaration that Lancer was estopped as a matter of law from denying coverage to TFD Bus, Michael Thomas, and/or Thomas and Celeste Lyons. R. 315 *et seq.*; R. 468 *et seq.*; R. 530 *et seq.* It was argued then: that Lancer was obligated to disclaim as of September, 1997, or at the least as of November, 1998, but failed to do so without justification until February of 1999 (R. 461 *et seq.*; R. 516 *et seq.*; R. 550 *et seq.*); that Lancer never properly disclaimed as to Thomas or Celeste Lyons, even if it could justify the timing of its disclaimer as to TFD Bus (R. 471-478; R. 637); that Lancer never properly disclaimed as to Michael Thomas (R. 525); and, in reply to the

8

opposition presented by Lancer: that Lancer's explanation of the sequence of events was a fabrication that had never been interposed in its pleadings (R. 623-626; R. 634 *et seq.*);   and that there was insufficient evidence, as a matter of law, to support Lancer's explanation for the timing of its disclaimer (R. 645-656).

The motion court denied summary judgment on the finding that fact questions were presented with respect to the timing of the issuance of Lancer's disclaimer.   The motion court summarized the factual dispute as follows:

> ... Lancer asserts that since TFD and Thomas contended that they had no prior notice of the lawsuit, an accommodation was reached with TFD's counsel would represent TFD until the jurisdictional issue was resolved since, if TFD and Thomas were unaware of the action's commencement, the contractual obligation to notify their insurer would not have been triggered.
>
> Consequently, they agreed, Lancer alleges, that TFD would not tender the claim at that time [September, 1997], and that Lancer would not immediately disclaim, though it did send a "reservation of rights" letter to TFD's attorney.  TFD's attorney disputes the carrier's contentions, asserting that he requested Lancer to assume the defense, but that it refused.
>
> In any event, TFD moved by order to show cause for vacatur of the judgment and dismissal of the complaint on jurisdictional grounds.  That motion was first granted by the Supreme Court in Westchester County on September 24, 1997.  Upon reargument, however, the court issued a decision on February 10, 1998, reversing itself and setting the matter down for a traverse hearing. The traverse hearing was conducted in November of 1998, and TFD was held to have been validly served.

9

> Lancer alleges that counsel for TFD agreed to take an appeal
> therefrom. Its position on point finds support in correspondence
> dated November 17, 1998 directed to it by counsel for its insureds,
> though the same letter requests Lancer to assume the defense of
> the action. Nevertheless, Lancer alleges that it relied on the
> representation that an appeal would be taken, and contends that
> when it learned that an appeal had not been pursued, a disclaimer
> issued to its insureds, exclusively. ... [brackets added]  R. 100-
> 101.

The motion court's description of the dispute was based, principally, on the

affidavit of Lancer's chief trial witness, John Petrilli. R. 572-582. On the basis of the

averments set forth therein, the motion court noted that "sharp questions of fact have

been presented which concern whether a tender of the claim by defendants TFD and

Thomas and a corresponding decision to disclaim by Lancer were postponed, by

agreement, or not." R. 102. In reaching this determination, the motion court also

rejected the peripheral arguments advanced by the respective movants as described

above. *Id.*

This court agreed that a fact issue was presented as to whether Lancer

disclaimed coverage "with reasonable promptness" in light of the conflicting evidence

described by the motion court. R. 736.

Thomas Lyons thereafter moved to reargue that portion of this court's decision

which found that the "remaining contentions are without merit". R. 84 *et seq.*

Specifically, Thomas Lyons sought reargument with respect to Lancer's alleged

10

failure to disclaim coverage for the "judgment" against TFD's employee-driver Michael Thomas as well as his own client's contention that he had never been a party to the events which defined the "triable issue of fact". R. 87-97. This court denied the application and assessed costs. R. 737.

Presently, the appellants assert that Petrilli "admitted" there was no "agreement" with TFD's attorney when the claim was first presented in September of 1997. They seek to justify reargument, once again, of all of the issues described above, on the basis of the insinuation that Lancer's trial witness and trial attorney essentially *perjured* their way to the trial floor.

In advancing this malignancy, the appellants rely on certain examination before trial testimony, given in November of 2000 (T. 376), wherein Petrilli acknowledged that he did not reach any agreement with Seiden "to hold in abeyance a coverage determination". T. 377. This testimony was exhaustively pursued during Petrilli's cross-examination at trial. T. 376-381.

Thomas Lyons describes this "admission" as evidence of Lancer's "misrepresentation of the existence of an agreement" at the time the summary judgment motions were argued (T. Lyons brief, p. 47); Celeste Lyons accuses Lancer of having "essentially defrauded the court into finding an issue of fact" (C. Lyons

11

brief, p. 43). TFD Bus states bluntly: Lancer "deceived and fooled" the court with its "misrepresentations". TFD brief, Point IV.

Since none of the appellants has seen fit to cite Petrilli's statements in fair or accurate context, a comparison of the critical components of Petrilli's affidavit and trial testimony is not merely appropriate but necessary.

* Petrilli's first notice of the Lyons lawsuit was when the insureds' attorney, Adam Seiden, called to tell him that a default judgment had been entered against the insureds on the basis of an alleged default which had occurred five years previously. Compare R. 574 with T. 148, 151.

* Seiden advised Petrilli that both TFD Bus and Michael Thomas had never been served with any legal process. Compare R. 574 with T. 149. He provided Petrilli with copies of legal papers which substantiated this claim. Compare R. 576 with T. 152.

* Petrilli advised Seiden that there might well be no coverage, if it was ultimately determined that his clients did, in fact, receive notice of the lawsuit but failed to notify Lancer. Compare R. 575 with T. 149-150. He explained that while he was willing to help out, the assistance could only be offered with the understanding that Lancer was preserving its right to deny coverage if the insureds had breached the policy. Compare R. 576 with T. 172.

* Seiden signified his understanding of Lancer's position with respect to this issue. Compare R. 576 with T. 375,376.

* Seiden did not "tender" the case to Lancer when he first spoke with Petrilli in September, 1997. Compare R. 575 with T. 148. He had already prepared the motion papers; at that point, there was nothing more to be done. Compare R. 574-575 with T. 176-177.

12

\*       The court initially dismissed the action, at least as against TFD Bus; but thereafter, on reargument, the court reinstated the case. Compare R. 576-577 with T. 180, 186.

\*       Seiden advised Petrilli that Lyons had filed an appeal, and he recommended that a cross-appeal be pursued. Compare R. 577-578 with T. 191. Petrilli agreed, and relied on the representation that Seiden would pursue the appeal. Compare R. 577-578 with T. 194-197.

\*       The first formal "tender" of the claim by TFD Bus to Lancer occurred after TFD lost the traverse. A lawyer by the name of Hirsch wrote to Petrilli to advise that he was working with Seiden, and that the time had now come for Lancer to appoint counsel for TFD in connection with the damage assessment which had been scheduled by the court. Compare R. 578 with T. 220.

\*       In that correspondence, however, Hirsch represented that Seiden would appeal the advrse ruling on the traverse. Compare R. 450 with T. 220.

\*       In a subsequent conversation with Hirsch, Petrilli was again advised that the insureds adamantly denied knowledge of the Lyons action, in that they insisted they had never been served despite the ruling of the court. Petrilli agreed with Hirsch to defer any final decision on coverage at least until they had a chance to further discuss the appeals. Compare R. 580 with T. 221. Petrilli believed that the earlier appeal, from the order reinstating the action, was going to be dispositive of the entire case. Compare R. 578 with T. 203-204.

\*       Sometime in or around the last week of January, 1999, Petrilli's associate was advised by TFD's attorney for the first time that neither of the appeals had been pursued. Compare R. 580 with T. 210.

\*       Petrilli recognized that by having abandoned the appeals, the insureds had now conceded their breach of the policy's conditions.

13

Compare R. 580 with T. 211.  The disclaimer was issued within days of that revelation.  Compare R. 581 with T. 212-213.

Even though no one objected during summation (T. 648-650), both TFD Bus and Celeste Lyons now see fit to comment that Lancer's trial counsel sanctioned the "misrepresentation" (TFD brief, pp. 30-31;  C. Lyons brief, p. 42).  Once again, the record citation in each instance is taken out of context and inaccurately describes the actual statements made on point:

> There was an agreement reached with Mr. Seiden from the very beginning, and it was an agreement that is memorialized in the reservation of rights letter of September 19, 1997.  'You guys appear to have breached the policy condition, but we will give you your opportunity to show us that you didn't breach a policy condition.'  That was the first agreement.  And then from that flowed the understanding, and you know it from the evidence you have heard, that until the insureds can show, as they were required, that they had in fact not breached the policy condition, Lancer is going to let them do their thing.
>
> During that time, despite the allegations to the contrary, Lancer offered, and it's in writing and it's in evidence and for you there to read and consider, to do, to take up the cost, to take up the expense, to handle the appeal.  And it was never accepted.
>
> And then the second component of the agreement, the second component had to do with the discussions and the understanding reached between Mr. Seiden -- I'm sorry, between Mr. Hirsch and Mr. Petrilli when the order of December 3 [the traverse ruling] was received, and the parties saw what was next to be dealt with. And the discussions were had about the continuation of the appeals, and the understanding was reached and the agreement was had, 'Look, let's get past the holidays and let's do what we

14

got to do once everything kind of settles down.  There's time.'
And nobody takes issue with that testimony.

Mr. Hirsch, who is an attorney for TFD Bus and who is the only
person in the world who can contest that Mr. Petrilli is being
anything less than absolutely forthright with you when he said that
he reached that agreement with Mr. Hirsch, Mr. Hirsch is not a
witness in this case because they didn't have him come in. They
had Mr. Seiden come in and deny there was an agreement.  But
Mr. Seiden didn't reach *that* agreement with Mr. Petrilli.  Mr.
Hirsch did. ... T. 648-650 [single quotes, brackets and italics
added].

Unfortunately for the integrity of the appellate process, there are numerous

other instances of incomplete, out-of-context record citations by these appellants:

* Thomas Lyons: it is "undisputed" that TFD demanded a defense
  and indemnification on September 8, 1997, citing paragraphs 16
  and 17 of Lancer's complaint.  Brief, pp. 8, 22.  In point of fact,
  these paragraphs were superseded by an amended complaint (R.
  330-341);  T. Lyons' counsel acknowledged in open court that he
  was "not using it as a legal argument that's binding on [Lancer] in
  the course of pleadings." T. 453.

* Thomas Lyons:  Lancer knew that Seiden was not representing
  Michael Thomas.  Brief, p. 11.  In point of fact, both Petrilli (T.
  149) and Seiden (T. 302) confirmed that Thomas was Seiden's
  client.

* Celeste Lyons: Petrilli "acknowledged" that the judgment against
  Michael Thomas was not affected by the traverse.  Brief, p.17.  In
  point of fact, Petrilli testified that to his understanding, the
  traverse would cover both TFD *and* Thomas.  T. 406.

* Celeste Lyons: Lancer had the same information in February of
  1999 [concerning the Lyons action against TFD and Thomas] that
  it had in September of 1997.  Brief, pp. 28-29.  In point of fact, the

15

critical piece of information which prompted the disclaimer was first revealed to Lancer in late January, 1999.  T. 211, 436-437.

Perhaps the most impressive misconstruction of this record on appeal relates to the jury question which all appellants disparage.  It is repeatedly argued:  that the jury question was insufficient to adequately provide the court with a basis upon which to issue its declaratory judgment;   that all appellants repeatedly objected to the presentation of this sole question to the jury;  and that the refusal of the trial court to add sub-parts to the jury question constituted reversible error.  T. Lyons brief; Point III,  C. Lyons brief Point V; and TFD Bus brief, Point II.

Clearly implicit in these arguments is the suggestion that it was Lancer which had asked the court to submit this question to the jury.  *In point of fact, the jury question was proposed by counsel for Thomas Lyons, since it was his position that the "ultimate question" involved an issue of law to be determined by the court.*  During a conference held with court and counsel prior to the start of the trial, the following took place:

> MR. CARROLL:  * * *  It's been our position as a matter of law that an 18-month delay between the tender of all of the documentation giving grounds for a disclaimer and the actual disclaimer would be unreasonable as a matter of law, without an explanation.
>
> The explanation offered by Lancer Insurance Company was that there was an agreement between TFD and Lancer to postpone the issuance of the disclaimer.  That is the issue of fact.

16

The Appellate Division, in affirming the decision of Judge Alpert, also said the Supreme Court correctly determined that a triable issue of fact, not plural, exists as to whether the plaintiff disclaimed coverage of its insured in the underlying action, quote, with reasonable promptness, end quote; not numerous issues of fact.

In this particular case we are here for a hearing. This is an equity matter for the Court to decide as a matter of law whether or not the delay between tender of the policy and information to Lancer and their issuance of a disclaimer was unreasonable as a matter of law, and that the jury requested by Lancer certainly could have a purpose in this proceeding for special findings of fact.

Certainly, the jury could be asked a question on a special verdict sheet, was there an agreement between Lancer and TFD to postpone the issuance of a disclaimer concerning representation of coverage. If so, when was that agreement entered into?

But I do object, and I think we are going on a major fishing expedition to give the issue to the jury, especially with undisputed facts of an 18-month delay, as to what anything may or may not have been unreasonable or reasonable under the circumstances. Because that ultimate decision has to be the Court's decision, because we are dealing with equity, although the Court may utilize the findings of fact to the jury in special findings.

THE COURT: Are you saying that I should decide whether there was an unreasonable delay or not?

MR. CARROLL: Ultimately I think you always have to decide that fact. If there are contested facts as to whether or not there is an agreement or not an agreement to postpone, certainly counsel has the right to ask for a jury to decide that issue.

THE COURT: You are saying it's a legal issue, then.

17

> MR. CARROLL: Yes, I'm saying to allow the jury to decide, 18 months, well, it's reasonable or it's not reasonable, totally contradicts all the legal holdings as a matter of law. T. 22-24

The record clearly establishes that Lancer objected to this analysis and took exception to the court's refusal to have the jury answer the "ultimate question" itself: whether, under the circumstances presented, Lancer's disclaimer was issued with reasonable promptness. T. 541-542. The court declined to give the jury any question other than the one "triable issue of fact, not plural" which counsel had sought. Indeed, even counsel's request for a supplement to this one "triable issue of fact" was denied (T. 542), as was his further request to add yet another component to the question. T. 569.

While it is true that each of the appellants also took exception to the question being submitted to the jury without either of the requested supplements, the trial court clearly endorsed the theory that the "ultimate question" remained a matter of law. The supplements, under such analysis, were thus irrelevant: the trial court heard the same testimony as the jury, and the appellants were eager to leave the "ultimate decision" to the court.

The final issue to address in this counter statement pertains to an argument raised by Thomas Lyons on a point *de hors* the record. Reference in this regard is

made to Point II of his brief (at least, the version which apparently has been filed; two separate "editions" have been served).

Lyons argues that as an interstate carrier, TFD's policy with Lancer is governed by federal regulation, which essentially obviates any repercussions caused by the breach of policy conditions. This is an argument which has never, ever been raised at any time in any of the proceedings which have taken place during the pendency of this action. It is also an argument which has no substantiation in any aspect of the record which is before this court.

The testimony of Albert Groccia, on behalf of TFD Bus, established only that the company operated a local school bus service in the Westchester metropolitan area. T. 461. While a "small percentage" of TFD's business involves "charter transportation" (*Id*), Groccia never suggested that the service involved interstate travel. No one disputes that the TFD vehicle involved in the accident of February 14, 1989 was a school bus; and no one has ever suggested that this bus was used in interstate transportation.

When an argument is "bottomed on facts *de hors* the record", and raised for the first time on appeal, the appropriate remedy, essentially, is to ignore it. See *Martin v. Manhattan and Bronx Surface Transit Operating Authority*, 198 A.D.2d 160, 604 N.Y.S.2d 65 (1st Dept. 1993).

19

POINT I:    LANCER HAS NEVER ALTERED ITS EXPLANATION OF THE EVENTS WHICH INFLUENCED ITS COVERAGE DETERMINATION; APPELLANTS' ACCUSATIONS OF FRAUD, DECEIT AND MISCONDUCT ARE BASELESS.

The fundamental predicate for revisitation of the appellate issues previously raised and decided, is the accusation that Lancer perjuriously misled the motion court in its opposition to the earlier summary judgment motions. This Point establishes the sophistry of this assertion.

There has never been an inconsistency in Lancer's explanation of the events which took place. As demonstrated in the Counter Statement of Facts, each fact offered by John Petrilli in his affidavit finds its counterpart in the transcript of his testimony. That he might have employed different words from those used by the motion court in its summary of his account, establishes only that the court was more concerned with identification of the issue, rather than precision in its presentation.

As Petrilli noted at trial, when asked to describe the nature of his discussions with Adam Seiden, "other people have used the word agreement. I just don't use that word." T. 375. "Mr. Seiden and I had an understanding." R. 376.

20

The appellants argue that since Petrilli "admitted" at his examination before trial that he did not enter into a specific "agreement" with Seiden, the trial court should have estopped any claim along that line. They submit that Petrilli's "admission" proves there was a material "misrepresentation" in the affidavit which "deceived and fooled" the courts during the earlier proceedings.

Petrilli told the motion court, via his affidavit, that he and Seiden had reached an understanding, and that in his subsequent conversations with Hirsch, he was given to believe that the understanding was still in effect. He also said that he agreed to withhold a formal and final disclaimer until the appellate process had run its course. R. 580. At trial, Petrilli again described the accommodation he had reached with Seiden, and the subsequent agreement with Hirsch to defer a response to his now-formal tender because "... there is a lot more to cover, one of them being the appeal." T. 221.

The appellants had become so focussed on the legalistic *accessories* that one might expect with an "agreement" (the formalities of written memoranda, specified terms, explicit assent, and so on), that they lost sight of its *substance*. The arrangement was articulated in Petrilli's affidavit, and repeated to the jury at trial. Simply put: when the default situation was first brought to Lancer's attention, the

attorney for the insured and the attorney for the insurer each understood and appreciated that it was premature to demand, or to deny, coverage.

Indeed, Seiden's testimony on this point is instructive. He readily acknowledged that the "reservation of rights" letter accurately summarized the obligations that his clients had, when served with legal process; and he took pains to explain those obligations to his clients. T. 291-293. The trial court and jury was certainly entitled to infer, from this testimony, that the insureds' attorney tacitly but categorically agreed to defer any "tender" of this five-year-old default to Lancer at that time, particularly in light of his subsequent dealings with Petrilli. Compare *Berlinger v. Lisi,* 288 A.D.2d 523, 731 N.Y.S.2d 916 (3d Dept. 2001).

It must be kept in mind, that when Lancer was first advised of the default judgment against its insureds, Seiden had already prepared and filed the papers seeking to vacate the default and dismiss the case. T. 176. Hence, any obligation to "defend" was already rendered superfluous when Lancer was first notified of the situation.

It must also be recalled that the Lyons action was *dismissed* when the court addressed Seiden's application in September of 1997. T. 301-302. Hence, with nothing to *indemnify* at that point, Lancer's time to react to any coverage situation had not even commenced. (Concededly, Thomas Lyons steadfastly maintains that the

22

court proceedings with respect to TFD Bus had no impact on the default judgment against Michael Thomas. However, *from the perspective of what Lancer knew or could have known,* the trial testimony clearly established that both Seiden and Petrilli believed that the court's dismissal should have applied to Michael Thomas as well as to TFD Bus. T. 178 [Petrilli]; T. 302-303 [Seiden].)

Further, it has to be noted that Lancer's first awareness of Lyons' motion to reargue the dismissal was *after* Seiden had already prepared his opposition papers and the motion was *sub judice.* T. 181. Moreover, when the Lyons action was reinstated in February, 1998, Seiden and Petrilli reached an understanding that Seiden was to pursue the appellate process. T. 191. To whatever extent it is argued by the appellants that Lancer should have at least assumed a duty to "defend" its insureds at this point in time, Petrilli's correspondence of March 25, 1998 lays the contention to rest: in it, he *offers to take over the prosecution of the appeal,* an offer which was *never* accepted by Seiden. T. 194-197; R. 609.

Finally, it needs to be repeated that *both* of Lancer's insureds adamantly *swore* that they had no knowledge of the Lyons action, either at the time that it was purportedly commenced some five years previously, or at the time that the enforcement proceedings were initiated. Lancer could not ignore its insureds' insistence that the policy's conditions had not been breached, and utilized its

23

"reservation of rights" letter to confirm its appreciation of the insureds' position in that regard. T. 185.

The court and jury obviously reached the conclusion that in the context of the foregoing events and communications, Lancer's "agreement" with its insureds to withhold formal "tender" and corresponding disclaimer, was forged through a series of understandings rather than a single contract-signing session. It is only through a pointedly inaccurate reading of this record that the appellants launch their accusation that Lancer perpetrated "an unallowable and deceptive change in position from one sworn affidavit to court sworn testimony." TFD's brief, p. 11.

The appellants strenuously cross-examined John Petrilli on perceived inconsistencies presented by his examination before trial testimony.  T. 376-381. Notably, however, none of the appellants confronted Petrilli with any fact or statement averred in the affidavit they now claim to be spurious.

As a general rule, the courts will disregard an affidavit if it materially differs from sworn examination before trial testimony, where it is evident that the contradictory affidavit raises *feigned* issues of fact. *Prunty v. Keltie's Bum Steer,* 163 A.D.2d 595, 559 N.Y.S.2d 354 (2d Dept. 1990).  The court must be satisfied, however, that the proffered conflict is not genuine, and is overcome by "compelling"

evidence that indeed, no factual issues are presented. *Alvarez v. New York City Housing Authority*, 295 A.D.2d 225, 744 N.Y.S.2d 25 (1st Dept. 2002).

In the absence of evidence that the purported fact issue is feigned, any inconsistency between an affidavit submitted in opposition to a summary judgment motion and testimony adduced at an examination before trial after the motion is decided, raises a credibility issue which is uniquely appropriate for resolution by a jury. *Knepka v. Tallman*, 278 A.D.2d 811, 718 N.Y.S.2d 541 (4th Dept. 2000); *Ramee v. Weathervane Seafoods*, 273 A.D.2d 768, 710 N.Y.S.2d 165 (3d Dept. 2000).

In the case at bar, there is *no* contradiction between Petrilli's affidavit and his trial testimony, much less any which would estop Lancer's claim in the case. Compare, *Solow v. Domestic Stone Erectors, Inc.*, 303 A.D.2d 283, 757 N.Y.S.2d 256 (1st Dept. 2003). Certainly, there is no "misrepresentation" of the material facts, since the affidavit is fundamentally consistent with the trial testimony. See, eg, *Psihogios v. Stavropoulos*, 269 A.D.2d 295, 703 N.Y.S.2d 462 (1st Dept. 2000).

At best, the supposedly conflicting examination before trial testimony, and Petrilli's response when confronted with it at trial, merely raised issues of credibility for the jury. *Weinstock v. Handler*, 251 A.D.2d 184, 674 N.Y.S.2d 368 (1st Dept. 1998). "Answers elicited on cross-examination cannot be deemed, as a matter of law, a retraction or correction of statements made in the direct examination." *Altman v.*

25

*Alpha Obstetrics and Gynecology, P.C.,* 255 A.D.2d 276, 679 N.Y.S.2d 642 (2d Dept. 1998), quoting *Ochs v. Woods,* 221 N.Y. 335, 117 N.E. 305.

This jury was free to be unimpressed, as is quite evident, by the alleged "admissions" in the examination before trial. See, eg, *Salazar v. Fisher,* 147 A.D.2d 470, 537 N.Y.S.2d 306 (2d Dept. 1989). Put another way, there was sufficient evidence to support the jury's conclusion that there was an agreement, from the outset, to postpone issuance of the disclaimer.

Moreover, if Petrilli's affidavit "essentially defrauded the court" as Celeste Lyons states, or "deceived and fooled the court", as TFD avers, the appellants had the opportunity - and indeed the obligation - to alert the court after the completion of his deposition in November, 2000. See *Levitt v. County of Suffolk,* 166 A.D.2d 421, 560 N.Y.S.2d 487 (2d Dept. 1990), *lv. dismissed,* 77 N.Y.2d 834, 566 N.Y.S.2d 588. In analogous situations, where a party seeks relief from a judgment which was purportedly procured by fraud or other misconduct, an application for relief must be made within a "reasonable time" after discovery of the alleged misconduct. See *City of Albany Industrial Development Agency v. Garg,* 250 A.D.2d 991, 672 N.Y.S.2d 541 (3d Dept. 1998).

In this case, rather than promptly seeking renewal after the conclusion of Petrilli's deposition, the appellants waited until trial before raising the alleged

26

contradiction between Petrilli's affidavit and his examination before trial testimony. Additionally, when the argument was first presented, it was predicated on the assertion that Petrilli's "admission" (that he never had a formal "agreement" with Seiden) required the trial court to rule that Lancer had *no explanation*, as a matter of law, for having failed to disclaim coverage at any point between September 1997 and November, 1998.  See, eg, T. 676-677.

At no point during or before trial, and indeed at no point until raised in the briefs on appeal, did any appellant accuse Lancer, its witness, or its trial counsel, of any deceit, fraud, or misrepresentation.  It is only now, after alternative trial and motion strategies have failed, that these unwarranted accusations are launched in desperation.

It is hoped that this court sees the gambit for what it truly is.

POINT II:    THE  TRIAL  COURT'S  RULINGS  DID  NOT

PREJUDICE THE APPELLANTS IN ANY WAY;

APPELLANTS  CANNOT  COMPLAIN  THAT

THEY WERE DEPRIVED OF A FAIR TRIAL.


Each appellant asserts that the trial court committed "reversible" error in several ways.  This Point demonstrates that if anything, the court erred in *favor* of the appellants.

An appropriate starting point in this analysis is the determination of the trial court to submit a single question to the jury:  was there an agreement to delay the issuance of Lancer's disclaimer?  T. 540.  While all appellants now decry the submission of this question, the fact remains that the appellants themselves had initially asked for it!  As detailed in the Counter Statement of Facts, the appellants believed that the court, and not the jury, should answer the "ultimate question" of whether Lancer disclaimed "with reasonable promptness".  Hence, they argued, over Lancer's objection (T. 26-27;  541-542), that in the final analysis, the case should be resolved as a matter of *law*, albeit with the assistance of the jury as to a discreet issue of fact.  T. 22-24.

28

Quite frankly, the trial court erred to their benefit when it endorsed the appellants' theory. The question of whether a disclaimer is timely *only* becomes a matter of law when the delay in disclaiming is unaccompanied by a viable explanation. *Hartford Insurance Company v. County of Nassau,* 46 N.Y.2d 1028, 416 N.Y.S.2d 539 (1979). However, in the first instance, the delay begins to run only after the insurer has *all* of the facts necessary to finalize its coverage decision. See, eg, *Matter of Allcity Insurance Company (Jiminez),* 78 N.Y.2d 1054, 576 N.Y.S.2d 87 (1991). As recently noted by the Court of Appeals, " ... most often the question of whether a notice of disclaimer has been sent 'as soon as reasonably possible' will be a question of fact ..." *First Financial Insurance Company v. Jetco Contracting Corp.,* 1 N.Y.3d 64, 769 N.Y.S.2d 459 (2003).

This court ruled that the unique circumstances presented in this case warranted a trial "as to whether the plaintiff disclaimed coverage of its insured in the underlying action 'with reasonable promptness'." *Lancer Insurance Company v. T.F.D. Bus Co., Inc.,* 286 A.D.2d 375, 728 N.Y.S.2d 709 (2d Dept. 2001). Rather than present this "ultimate issue" to the jury, the trial court allowed the appellants to "define" the jury issue.

It is well established that when a trial court commits an error which results in a more favorable ruling to the losing party, that party cannot complain of such error

29

on appeal.   See, eg, *Giannetto v. General Exchange Insurance Corporation,* 10 A.D.2d 442, 200 N.Y.S.2d 238 (4th Dept. 1960).  In this instance, the jury was asked to determine whether there was an agreement, not whether Lancer acted promptly once it had all the facts.  If the jury found that at *any* point in time, from first notice to ultimate disclaimer, Lancer did not have an agreement "in place", the promptness of its response, upon the revelation in late January of 1999 that the insureds had effectively conceded their breach of the policy conditions despite months of sworn and vehement denial, would have been rendered irrelevant.  In short, despite the appellants current complaints, the jury question which they requested, even without qualifiers as to date or duration, made it far easier for them to prevail at trial than the law warranted.

Incidentally, any error by the trial court in declining to supplement the verdict sheet by having the jury also define the date and duration of the "agreement", is at best harmless from the appellants' perspective.  The appellants urged the trial court decide the "ultimate issue" as a matter of law;  hence, they fought to restrict the jury's participation to a discreet chore.  Nevertheless, the trial court saw and heard the same evidence that the jury did, and was also very aware of the appellants' trial theory that Lancer had "admitted" there was no agreement between September 1997 and November, 1998.  Hence, it was uniquely in a position to decide the "ultimate

question" of whether Lancer issued its disclaimer "with reasonable promptness", *irrespective* of the jury's verdict.

That the trial court chose to merge its ruling with the decision of the jury, finding that "Lancer has no duty to provide coverage to the defendants" (T. 677), stands as testament to the "reasonable promptness" with which Lancer acted once the critical facts were revealed.  Compare, *Nicastro v. Park,* 113 A.D.2d 129, 495 N.Y.S.2d 184 (2d Dept. 1985).  The appellants argued that in the end, the court should decide;  and in the end, it did.

Another error ascribed by the appellants is related to the subject of the first Point of this brief.

The appellants argue that the trial court should have precluded any claim that an agreement had been reached between Petrilli and Seiden, since he "admitted" in his deposition that he and Seiden did not expressly agree to postpone both the formal tender of the claim and the corresponding issuance of Lancer's disclaimer.  It was argued at trial, that the "admission" in this respect left the trial court with no choice but to declare that Lancer's issuance of a disclaimer 18 months later was untimely as a matter of law.  T. 507-508.

As discussed in both the previous Point and here, this argument ignores the credence that the court and jury ascribed to Petrilli's testimony, disregards the

31

consistency of the other evidence in support of his account, and fails to recognize that neither court nor jury were persuaded that Petrilli's examination before trial testimony damaged Lancer's position in this case.

Nevertheless, both Thomas Lyons, in his brief at page 38, and TFD Bus, in its brief at page 19, attempt to salvage this argument by pointing to Lancer's further "admission" in its pleadings that the underlying claim was, in fact, tendered in September of 1997. Both of these appellants urge this court to conclude that the trial court should have precluded any evidence surrounding Petrilli's understanding with Seiden.

It must therefore be observed in this regard, that neither of these appellants saw fit to acknowledge that Lancer had amended its complaint, effectively correcting this "admission". R. 331-340. Indeed, neither acknowledges that at trial, they conceded that the amendment eclipsed the original pleading, and that any admission contained therein was not "binding" on Lancer. T. 453; see also *Felder v. Wank,* 227 A.D.2d 442, 642 N.Y.S.2d 695 (2d Dept. 1996).

There can be no "error" attributed to the trial court for having correctly applied the law governing this issue.

Another "error" which prompts discussion among the appellants, is the perception that the trial court should have precluded evidence of any "agreement"

whatsoever, since Lancer never affirmatively asserted such a "defense" in its pleadings.

This argument dodges the reason why this declaratory judgment action was brought in the first place: to validate the propriety of Lancer's disclaimer *under all of the circumstances presented in the case*. Lancer's burden was to prove that it became aware of certain facts which affected coverage, and that it acted "as soon as reasonably possible" after it became aware of those facts. See, eg, *Mount Vernon Housing Authority v. Public Service Mutual Insurance Company*, 267 A. D.2d 285, 699 N.Y.S.2d 905 (2d Dept. 1999). Certainly, the appellants were aware of Lancer's position in this case since its coverage "defense" was detailed in opposition to their motions for summary judgment.

There is no requirement that the specific facts supporting the timing of the insurer's disclaimer be pleaded in a declaratory judgment complaint. Even if there was such a requirement, moreover, the appellants can hardly claim to have been prejudiced thereby. See, eg, *Spiegel v. 1065 Park Avenue Corporation*, 305 A.D.2d 204, 759 N.Y.S.2d 461 (1st Dept. 2003).

Each of the appellants urges this court to find error in the repudiation of their trial motions predicated on the holding in *Uptown Whole Foods, Inc. v. Liberty Mutual Insurance Company*, 302 A.D.2d 592, 756 N.Y.S.2d 251 (2d Dept. 2003).

33

They submit that the facts of that case are "on all fours" with this action, and that the trial court should have obeyed the precedent.

Once again, the appellants depart from accuracy.

In *Uptown Foods*, this court was confronted with a situation where the insured denied that the underlying action was properly commenced, but *expressly acknowledged* that the summons and complaint had been "found" in the area of the insured's cash register. Moreover, the summons, complaint, affidavit of service, and order granting default were provided to the insurer *by the plaintiff's attorney*. It was not until almost two months later, after an investigation of *unrelated* matters, that the insurer then disclaimed.

In the case at bar, Lancer's first notice of the underlying action came from the insureds' attorney, who supplied, along with the other papers, copies of the insureds' sworn affidavits which not only contested *service*, but also averred *no knowledge* of the underlying action. R. 247-251.

Not one of the appellants acknowledges the significance of these affidavits as they "compare" the facts of this case to *Uptown Foods*.

Also in the case at bar, neither Thomas Lyons nor Celeste Lyons made any effort to notify Lancer of their lawsuit, or the alleged default, or the damages inquest; their identity was not revealed to Lancer until *after* judgment enforcement proceedings

34

prompted *the insureds* to contact Lancer first.  While Thomas Lyons continues to believe, erroneously, that his mere presence in the same courtroom as Lancer's attorney constitutes "notice" of his demand for coverage, the fact remains that in this case, Lancer's first awareness of the underlying action was accompanied by the strenuous averment of both insureds that they, too, were unaware that litigation had been commenced against them some five years previously.

The case at bar does not involve an insured's "conclusory denials of receipt" of the summons and complaint.  See, eg, *Boutin v. Aetna Casualty & Surety Company,* 264 A.D.2d 434, 694 N.Y.S.2d 134 (2d Dept. 1999).  Rather, the insureds *swore* to their lack of knowledge of the lawsuit, and this position was *emphatically* affirmed by their attorney.  T. 384-385.  Consequently, a disclaimer of coverage could not be sustained as a matter of law, until such time as the insureds could have a hearing on the issue.  *Kopman v. Blue Ridge Insurance Company,* 296 A.D.2d 479, 745 N.Y.S.2d 472 (2d Dept. 2002).

Lancer brought this declaratory judgment action for the express purpose of validating the timing of its disclaimer, after it accorded the insureds their opportunity to establish that they had not breached the policy conditions.  It was not until Lancer learned that the insureds had abandoned this effort, and essentially conceded the breaches, that Lancer promptly issued its denial of coverage.

35

Indeed, a disclaimer issued within two weeks of the insured's admission that he had misrepresented facts has been upheld as a matter of law. *Nationwide Mutual Insurance Company v. Graham*, 275 A.D.2d 1012, 713 N.Y.S.2d 602 (4th Dept. 2000). The trial court can hardly be criticized for sustaining Lancer's disclaimer, issued within two-and-one-half weeks of the revelation, on the basis of the jury's verdict in this unique case.

The remaining "errors" asserted by the appellants are either unpreserved or insignificant. See *Sanchez v. City of New York*, 299 A.D.2d 475, 749 N.Y.S.2d 744 (2d Dept. 2002); see also *Brown v. Stark*, 205 A.D.2d 725, 613 N.Y.S.2d 705 (2d Dept. 1994).

There was objection to the introduction of Petrilli's letter of March 25, 1998, wherein he offered to assume the responsibility of prosecuting the appeal recommended by Seiden. T. 195-196; R. 609. The appellants contended at trial that this letter was inadmissible "hearsay"; but in the next breath, they argued that the letter should "speak for itself". T. 196-197. Patently, the subsequent objection effectively eclipsed the hearsay objection: if the letter speaks for itself, it cannot be hearsay. Moreover, the letter was written by the witness, and addressed to Adam Seiden, who also testified at the trial. Any "hearsay" component to the letter was thus

36

obviated by the unfettered opportunities of examination and cross-examination concerning its contents.

The appellants also objected to testimony by John Petrilli that Lancer could not "legally" disclaim before February of 1999. T. 226. It is argued that Petrilli was improperly allowed to testify to "the ultimate issue" in the case. Celeste Lyons brief, p. 58. However, as noted previously, the appellants successfully contended that the "ultimate issue" belonged to the court, not to the jury. Hence, the jury's decision, was unimpaired by any testimony concerning the "legality" of the timing of Lancer's disclaimer.

Another putative error, also briefed by Celeste Lyons, involves her request to "preclude" reference at this trial to the fact that the underlying action was purportedly commenced after the expiration of the statute of limitations. Celeste Lyons does not brief this argument in any great detail, but the noteworthy observation is that the focus of her trial objection, the decision of Justice DiBlasi (which mentions the statute of limitations), was thereafter admitted into evidence without objection by any of the appellants. T. 189.

TFD Bus argues in its brief that the trial court improperly precluded reference to the amount of the judgment obtained by Thomas and Celeste Lyons following their inquest against TFD Bus and Michael Thomas. TFD brief, p. 24. Although the court

37

permitted reference to a "substantial" judgment (T. 41), the appellants argued strenuously that the exact amount should be revealed to the jury. T. 30-34. TFD Bus argues that this information was necessary in order to substantiate TFD's claim that it could not afford to bond the appeal which (it claims) Lancer was "forcing" it to pursue. T. 32.

The problem with this argument is three-fold. The trial court never precluded TFD from contending that it could not afford to bond a "substantial" judgment (T. 40-41). Also, the testimony precluded the premise: Adam Seiden posited that no appeals were pursued because the court orders were "preliminary" and hence "not appealable" T. 275; not because they were costly. Finally, the appeal which held the greatest relevance to the coverage issue involved the court's reversal of its initial order of dismissal; no bond was necessary to perfect that appeal.

None of the errors ascribed by the appellants is sufficient, either alone or cumulatively, to warrant reversal of the judgment below. None of the alleged errors unfairly prejudiced any of the appellants. The judgment below should therefore be affirmed. See *Ateser v. Becker,* 272 A.D.2d 219, 708 N.Y.S.2d 76 (1st Dept. 2000).

POINT III:  THE  APPELLANTS  MAY  NOT  REARGUE
ISSUES  WHICH  HAD  BEEN  RESOLVED  ON
THE PRIOR APPEAL.

The appellants raise topics which had been argued - and reargued - to this court during the prior appellate process.  Nothing raised on this appeal justifies revisitation of the ruling.  Indeed, this final Point would not have been necessary but for the appellants' disdain for the doctrine of law of the case.

The following themes are pursued once again:  Lancer never disclaimed as to Michael Thomas;  and Lancer failed to properly disclaim to Thomas and Celeste Lyons.

In addressing the appropriate response to these resurrected arguments, Lancer is fully cognizant of the current justification being advanced by the appellants.  Since they are now asserting that Lancer's earlier *apologia* was predicated on fraud, misrepresentation, deceit and misconduct, the appellants evidently believe that these prior appeal issues are now back in "play".

This is a vacuous assumption:  since the target of the accusations is the "agreement" to postpone the disclaimer, there is no justification for reargument of these two topics.

Thomas Lyons argues, in a virtually identical reprise to his first appeal, that Lancer never disclaimed coverage for the "judgment" obtained against Michael Thomas. He argues that this judgment was never vacated, and that the disclaimer letter was never sent to his attention. Thomas Lyons brief, Point I. Celeste Lyons takes some pains to edit and revise her earlier appeal, but essentially mounts the same attack. Celeste Lyons brief, Point IV.

On the earlier appeal, this court found, essentially, that these arguments were "without merit" (R. 736), and indeed rebuffed an effort to reargue those issues following issuance of it earlier decision. R. 737.

The current accusations have no effect on the determination previously reached, and effectively confirmed on reargument. Even if one were to accept the spurious accusation that the motion court had been "deceived and fooled" into finding a question of fact, the appellants' analysis with respect to Michael Thomas remains undisturbed. The appellants had argued from the outset that any "agreement" between TFD and Lancer had no impact on Lancer's obligations to Thomas; hence, even if the "agreement" issue was "misrepresented" to the court, as is now argued, the prior ruling with respect to Michael Thomas is the law of the case. *Ometz Realty Corp. v. Vanette Auto Supplies, Inc.,* 262 A.D.2d 539, 691 N.Y.S.2d 797 (2d Dept. 1999); *Wendy v. Spector,* 305 A.D.2d 403, 758 N.Y.S.2d 526 (2d Dept. 2003).

Moreover, without belaboring an issue which should never have been raised, the trial testimony of both Petrilli and Seiden credibly established that at all times, Seiden's activities were undertaken on behalf of Michael Thomas as well as TFD Bus; and that communications to and from Seiden were accepted as communications to and from both of Lancer's insureds.

Similarly, the arguments advanced with respect to Lancer's obligation to disclaim "separately" to Thomas and Celeste Lyons should also be precluded by the law of the case.

Thomas and Celeste Lyons had argued, during the earlier appeal, that the existence of any "agreement" was of no significance to their "rights", since they were never a party to any such "agreement" and could not be bound by its "terms". They also argued that they had *independently* "tendered" to Lancer at the time that Seiden's motion to vacate and dismiss was argued; and that Lancer's failure to recognize that "tender" should estop the disclaimer as to Thomas and Celeste Lyons irrespective of any "agreement" between Lancer and TFD. R. 105 *et seq.*

Precisely the same argument is now being advanced, despite the fact that this court rejected it during the first appeal and its reargument follow-up. Since Lyons urged this analysis irrespective of whether there was an "agreement", the aspersions cast against Lancer on this appeal have no bearing on the court's earlier resolution of

41

this argument. Hence, the rejection of this argument during the earlier appellate process, in light of the full and fair opportunity that the appellants had to advance it, constitutes the law of the case. *Engel v. Eichler,* 300 A.D.2d 622, 753 N.Y.S.2d 109 (2d Dept. 2002).

Nevertheless, in the event this court exercises the discretion to revisit the issue, it should be kept in mind that once the insured placed the insurer on notice of the action, there is no duty to disclaim on the basis of the injured party's failure to provide notice. *Ringel v. Blue Ridge Insurance Company,* 293 A.D.2d 460, 740 N.Y.S.2d 109 (2d Dept. 2002). In addition, the record at trial confirms the conclusion that despite sitting on a five year old default judgment, neither Thomas Lyons nor Celeste Lyons took any step to notify Lancer, even after unleashing enforcement proceedings against TFD Bus.

## CONCLUSION

For all of the reasons set forth herein, it is respectfully submitted that the judgment below should be affirmed in every respect, and that this court confirm the propriety of the determination that there is no coverage under Lancer's policy for any of the claims asserted against TFD Bus or Michael Thomas as a result of the litigation prosecuted by Thomas and Celeste Lyons.

Respectfully submitted,

Curtis, Vasile, Devine & McElhenny
*Attorneys for Plaintiff-Respondent
Lancer Insurance Company*

By:  Roy W. Vasile

2174 Hewlett Avenue
P.O. Box 801
Merrick, New York  11566

Phone:      (516)  623 - 1111
Fax:          (516)  623 - 0758

43

## CERTIFICATE OF COMPLIANCE
### Pursuant to 22 NYCRR §670.10.3(f) of the
### Appellate Division, Second Department

t is hereby certified that the information below sets forth the specifications by which

his computer-generated brief complies with Rule §670.10.3(f) of this Court.

he foregoing brief was prepared on a word processor.  A proportionally spaced

peface was used, as follows:

      The typeface (font):    Times New Roman

      The point size:    14

      The line spacing:    Double

e total number of words in the brief, inclusive of point headings and footnotes and

clusive of pages containing the table of contents, table of citations, proof of service,

rtificate of compliance, or any authorized addendum containing statutes, rules,

gulations, etc., is 9743.

ted:    Merrick, New York
        May 10, 2004

                            ROY W. VASILE