## Preface

Plaintiffs oppose this application to dismiss by arguing that they could not have litigated the MCS-90 issue at any time beforehand. They suggest that their reliance on that issue during the prior appellate process was merely for informational, rather than substantive, reasons. Thus, they postulate that the prior litigation between the same parties over the same question of coverage arising from the same set of factual groupings and involving the same series of transactions should not, nevertheless, preclude maintenance of the current lawsuit.

Plaintiffs conspicuously ignore the authorities cited in support of Lancer's motion to dismiss. Indeed, they do not even attempt to rebut Lancer's analysis of those authorities. Rather, plaintiffs repeatedly intone the mantra that the "elements" of their MCS-90 claim were still inchoate when the earlier case was litigated, although they offer no support for this position.

Evidently, since Lancer had objected during the first litigation to the manner in which the MCS-90 issue was interjected, the plaintiffs appear content to assume here that merely because Lancer registered an objection, the doctrines of *res judicata* or collateral estoppel now cannot apply.

Lancer offers this reply memorandum to repudiate these contentions and to further support its motion to dismiss. Lancer respectfully submits that plaintiffs' arguments are entirely misplaced.

## Summary

Under prevailing law, the MCS-90 is *not* an "independent endorsement" which stands on its own irrespective of the policy to which it is attached. Hence, a judgment declaring that there is no duty to defend or indemnify "under the policy" precludes this current attempt to relitigate one of the policy's endorsements.

Moreover, contrary to plaintiffs assertion herein, a claim under the MCS-90 endorsement accrues when coverage is *denied* on one or more of the grounds obviated by the endorsement, and *not* when there is a "final judicial determination" of non-coverage. There is no case or other authority which supports the notion that a claim for coverage under the MCS-90 endorsement cannot even be asserted until there is a "final judicial determination" under other provisions of the same policy.

Finally, contrary to the representation now put forth by the plaintiffs, the underlying judgment against the school bus company and its driver had been obtained years ago. The current averment that the judgment was not "final" until 2006 is inaccurate, and therefore cannot justify the argument that one of the necessary "elements" to the MCS-90 claim was lacking at the time the earlier declaratory judgment action was litigated.

In point of fact, during the earlier litigation, plaintiffs not only insisted that their judgment against the driver always remained valid, but they also negotiated an agreement with the school bus company regarding the finality of that judgment as well. Thus, in urging the appellate courts to rule in their favor on the MCS-90 issue, they acknowledged that all of the relevant facts and pre-conditions had been established in the underlying litigation

2

in order to support their arguments, and they affirmatively relied on the MCS-90 endorsement in seeking judgment against Lancer as a matter of law.[1]

The fact that plaintiffs charted a strategy of holding the issue back until appeal does not rejuvenate the issue for litigation in this forum. They argued that the issue was ripe, the facts in support of their position were fully developed, and the question was strictly one of law.

In short, plaintiffs *had no choice* but to raise the MCS-90 issue during the prior litigation; and as the record amply demonstrates, they did in fact vigorously urge the issue only to be *substantively* rebuffed with the appellate court's determination that the argument was "without merit".

## Argument

### 1.    The MCS-90 endorsement is an integral part of the policy to which it is attached.

A fundamental predicate to plaintiffs' opposition is the notion that the MCS-90 endorsement is somehow "independent" of the policy to which it is endorsed. It is argued that the prior judgment obviating coverage under the *policy* does not bar litigation of coverage potentially available under the *endorsement*.

It bears emphasizing that the New York Court of Appeals and the federal courts which have analyzed the MCS-90 endorsement have all concluded to the contrary. The law is clear: the endorsement *cannot* be read independently of the policy as a whole.

---

[1]    See Point V of the Reply Brief of Thomas Lyons, annexed to the principal motion papers as Exhibit "5".

In *Pierre v. Providence Washington Insurance Company,* 99 N.Y.2d 222, 754 N.Y.S.2d 17 (2002), the New York Court of Appeals analyzed the holdings of several federal courts and concluded that prevailing law required that the endorsement be interpreted *in conjunction with* the rest of the insurance policy. The court observed that if the endorsement was intended "to create contractual obligations distinct from those in the policy, [it] would have included separate provisions in the endorsement defining coverage, rather than merely negating exceptions included in the policy." *Id.,* 99 N.Y.2d at 235, 754 N.Y.S.2d at 188.

The language of the endorsement itself further establishes this maxim. The endorsement states:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured . . .
> * * *
> It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment . . . However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company.[2]

The *Pierre* court predicated its analysis on several federal court decisions, including *John Deere Insurance Company v. Nueva,* 229 F.3d 853 (9th Cir. 2000); *Adams v. Royal Indemnity Company,* 99 F.3d 964 (10th Cir. 1996); and *Campbell v. Bartlett,* 975 F.2d 1569 (10th Cir. 1992). In each of these cases, the courts ruled that a proper understanding of

---

[2]  A copy of the front half of the MCS-90 endorsement which amended the policy issued to Lancer's insured in this case, is annexed to plaintiffs' affidavit in opposition as Exhibit B.

4

the meaning of "insured" required reference to portions of the policy other than the endorsement itself; hence, the *Pierre* court concluded that the endorsement had to be read *in conjunction with* the other provisions of the policy as a whole, abrogating any argument that the endorsement provided coverage independently of the policy itself.[3]

The rationale of the *Pierre* court was cited with approval in *Insurance Corporation of New York v. Monroe Bus Corp.,* 491 F.Supp.2d 430 (S.D.N.Y. 2007). In that case, which involved a reimbursement action commenced by the insurer under an MCS-90B endorsement[4], the court agreed that "by its literal language, the MCS-90 endorsement simply does not provide separate coverage." *Id.* at 440, quoting *Pierre, supra.*

Further, in *Connecticut Indemnity Company v. QBC Trucking, Inc.,* [not reported in F. Supp.2d], 2005 WL 1038878 (S.D.N.Y.), the court discussed whether an MCS-90 endorsement created "primary insurance" obligations in a dispute between insurers despite the "other insurance" language set forth elsewhere in the policy. In concluding that the endorsement ". . . alters the terms of the insurance policy with respect to injured parties, but does not extend the changes to the relationship between the insurer and the insured", the court clearly viewed the MCS-90 endorsement as an integral part of the policy, and not as an independent coverage contract.

---

[3]    Incidentally, these cases also confirm that the bus driver in this case was an insured under the MCS-90 endorsement; plaintiffs have constantly insisted that their judgment against him always has been "final". See, eg, Lancer's Exhibit "2" [Thomas Lyons' Appellate Brief] at p.11.

[4]    The operative language in the MCS-90 and the MCS-90B endorsements is identical.

There is one case with admittedly questionable value, but which is disclosed to this Court for what it might be worth[5]. In *Barbarula ex rel. Estate of He v. Canal Insurance Company,* 353 F.Supp.2d 246 (D.Conn. 2004), the court found that since the MCS-90 endorsement is governed by federal law, its coverage remained in effect even though the rest of the policy had been validly canceled under state law. The court recognized that since a separate body of federal regulations governed the cancellation process for the MCS-90 endorsement, compliance with state regulations was insufficient to void coverage. Interestingly, however, in a subsequent decision, the court noted that *except* for the unique situation involving the cancellation process, "when the underlying policy is in effect, the two documents [the MCS-90 endorsement and the policy itself] may be read together." *Barbarula v. Canal Insurance Company,* [not reported in F. Supp.2d], 2006 WL 2246384 (D. Conn.).

Thus, the question of coverage under a liability policy *necessarily* requires a discussion of whether coverage is available under any of its accompanying forms. Since the issue of coverage under an MCS-90 endorsement involves the same facts and circumstances, and arises from the same transactions or series of transactions as the issue of coverage under the other provisions of the policy, New York's *res judicata* doctrine left plaintiffs no choice but to litigate the MCS-90 issue in the earlier litigation. See generally *Trakansook v. Astoria Federal Savings and Loan Association,* Slip Copy, 2007 WL 1160433 (E.D.N.Y.).

---

[5]     The Westlaw Keycite feature indicates that this decision, along the subsequent decision issued by the same judge in the same case, have both been marked: "opinion withdrawn".

2.    **The plaintiffs are estopped from claiming that they could not have litigated the MCS-90 issue in the earlier proceeding.**

Plaintiff's oppose Lancer's motion to dismiss by suggesting that the facts necessary to litigate the MCS-90 issue had not been established in the earlier action. In a curious recounting of "new" facts not previously disclosed, the plaintiffs claim at p. 3 of their memorandum, that the school bus which struck Lyons' car had been on an interstate trip; they explain that although it was carrying school children at the time of the accident itself, it had previously transported adults from Armonk to Mount Vernon by way of Interstate Route 684, which transects a small section of Connecticut.[6]

It is contended that the MCS-90 issue could not, therefore, have been fully and fairly litigated; and that the only reason Lyons "mentioned" the issue during the appellate process was "in an effort to convince the Appellate Court that Lancer's disclaimer, under the policy, was untimely."[7]

How the "mention" of the MCS-90 endorsement bears on the *timeliness* of Lancer's disclaimer is never explained; but of course there is no explanation other than the observation that the plaintiffs knowingly pursued an alternate strategy, on appeal, of seeking judgment *as a matter of law* despite the jury verdict which had been returned against them.

---

[6]    Since this Court has permitted Lancer to move for dismissal solely on *res judicata*/collateral estoppel grounds, the patent falsity of these assertions will be confronted only if this Court determines that it is appropriate to do so.

[7]    Carroll affidavit, para. 14.

It borders on sophistry to propose that the plaintiffs never truly wanted the appellate court to address the *merits* of their MCS-90 argument. Indeed, one suspects that if the Appellate Division had ruled in plaintiffs' favor on this issue, they would not have rejected the ruling on the ground that they never meant their argument to be *substantive*.

The memorandum and exhibits previously submitted in support of Lancer's motion to dismiss document the extent to which the plaintiffs proactively urged the appellate courts to grant judgment to them as a matter of law on the basis of the MCS-90 endorsement. If anything, the aggressiveness with which plaintiffs argued the MCS-90 issue in the prior action bears out their conscious decision to pursue an alternate strategy as to the merits of their coverage claims.

In prosecuting their MCS-90 argument during the prior litigation, plaintiffs espoused the position that all the necessary facts were fully and firmly established. As plaintiff Thomas Lyons put it, the facts were "undisputed"[8] and "have not been contested by any party"[9]. Significantly, these "undisputed" facts included plaintiffs' assertion that "final" judgments had been obtained against both the school bus company and its bus driver.[10]

However, in a complete "about face", plaintiffs now contend that their judgment did not become "final" until 2006, when it was entered. Hence, they contend that the MCS-90 issue could not have been litigated since a necessary "element" to the claim was lacking.

---

[8]     See Lancer's Exhibit "2", at Point II, p. 43.

[9]     See Lancer's Exhibit "5", at Point V, p. 27.

[10]    See Lancer's Exhibit "2", at p. 43.

Such an argument, like the one before, is precluded by reason of plaintiffs' earlier position; and it is, in any event, disingenuous.

In the first instance, plaintiffs had previously alleged in formal pleadings that judgments had been obtained against both Michael Thomas and T.F.D. Bus.

Throughout the prior litigation, they adamantly insisted that the judgment entered against Michael Thomas was never vacated or voided in any way. The Appellate Division expressly acknowledged the point, noting that "the default judgment already previously rendered against Thomas was unaffected, and remained valid".[11]

As previously noted, since Michael Thomas would qualify as an "insured" under the MCS-90 endorsement, that judgment alone satisfies the "element" which plaintiffs now claim to have been lacking. Since the judgment against Michael Thomas was entered - and thus unquestionably "final" - even before the declaratory litigation was commenced, then even under plaintiffs' line of reasoning herein, they possessed all of the requisite elements supporting their MCS-90 claim at the time.

In addition, in the earlier declaratory judgment action, both Thomas Lyons and Celeste Lyons raised counterclaims in their respective answers where they explicitly claimed and alleged that a "money judgment" (in the words of Celeste Lyons) had been obtained against the bus company.[12] In point of fact and as a matter of record, not only had a judgment been obtained, but the parties thereto had negotiated an agreement which ensured its finality.

---

[11]    See Lancer's Exhibit "6".

[12]    See Lancer's Exhibit "3".

In a stipulation executed in June of 1999, plaintiffs deferred the *recording* of their judgment so long as T.F.D. Bus made periodic payments toward its satisfaction (and of course cooperated in the defense of Lancer's declaratory judgment action).[13]

In accordance with that stipulation, the bus company *waived all rights of appeal*. Thus, no matter when the judgment might ultimately have been *entered*, it was certainly "final" well before the declaratory judgment litigation had run its course.

Specifically, the agreement provided:

> 2.     T.F.D. BUS CO., INC. must unconditionally waive any appeal(s) and consent to the execution of a judgment in the full amount awarded plaintiffs on April 20, 1999, together with interest from the date of the entry of the prior judgment of liability on December 17, 1992 and the costs and disbursements of this action. A copy of the proposed judgment and bill of costs will be provided to counsel immediately. Notwithstanding the Court's execution of same, this judgment will not be enforced, but instead will be held in escrow and not recorded, provided T.F.D. BUS CO., INC. is not in default of this agreement, until such time as a final disposition of the now pending declaratory judgment action has been reached . . . (emphasis in the original).[14]

The "unconditional" waiver of any right to appeal and consent to execution is not predicated on "entry" of the judgment. Thus, the judgment which plaintiffs now claim was never entered until 2006, actually had become "final" by consent during the pendency of the prior declaratory judgment litigation. See *Green v. Royal Indemnity Company*, (not reported in F. Supp.), 1994 WL 267749 (S.D.N.Y.) [" 'A consent decree entered pursuant

---

[13]     A copy of this stipulation is annexed to this memorandum and incorporated herein.

[14]     *Id.,* at p. 6.

10

to a stipulation of the parties has the same force and effect as any other judgment.' (Citation omitted)".

Moreover, and under any circumstances, plaintiffs are estopped from espousing a different position in this litigation even if the judgment did not become "final" until its entry in 2006. "The doctrine of estoppel against inconsistent positions precludes a party from 'framing his . . . pleadings in a manner inconsistent with a position taken in a prior proceeding' (citations omitted)". *Environmental Concern v. Larchwood Construction Corp.,* 101 A.D.2d 591, 476 N.Y.S.2d 175 (2d Dept. 1984). In New York, the doctrine found its genesis in *Houghton v. Thomas,* 220 A.D. 415, 221 N.Y.S. 630, *affirmed,* 248 N.Y. 523, 162 N.E. 509 (1928), where it was stated:

> We think defendant Mack is estopped from a recovery of any judgment in this counterclaim, and that he comes within the rule that a claim made or position taken in a former action or judicial proceeding will estop the party from making any inconsistent claim or taking a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party. *Id.,* 220 A.D. at 423.

In the earlier litigation, the plaintiffs had affirmatively argued that there were no impediments to judgment "as a matter of law" under the MCS-90 endorsement. Now they argue that "final" judgments in both the underlying case as well as the declaratory judgment action are necessary "elements" of their MCS-90 claim. The dignity of the judicial process should not countenance such inconsistency in the assertion of determinative events. See, eg, *Bates v. Long Island Railroad Company,* 997 F.2d 1028 (2d Cir. 1993).

In short, plaintiffs cannot be heard now to complain that they were denied a full and fair opportunity to litigate a crucial coverage issue when they had at their disposal every opportunity to do so. *Res judicata* "prevents litigation of a matter that could have been

11

raised and decided in a previous lawsuit, whether or not it was raised." *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir. 1985).

### 3. Plaintiffs are not entitled to a second opportunity to litigate the same issue which had been argued by them, and substantively resolved against them, in the earlier action.

Plaintiffs continue to urge the notion that since they had only raised the MCS-90 issue during the appellate process, they were somehow denied a "full and fair" opportunity to litigate that claim during the earlier action.

Once again, plaintiffs take a position that is completely contrary to that espoused in the earlier litigation.  At the time, although plaintiffs did not identify the MCS-90 endorsement *by name* until reaching the appellate level, they had counterclaimed, moved for summary judgment before the completion of discovery, and proceeded to trial on the basis of the argument that they were entitled to coverage *as a matter of law*.  As plaintiff Thomas Lyons framed the issue in his brief: "All of the facts in support of this legal issue were developed in the record and have not been contested by any party."[15]

Plaintiffs charted a strategy of keeping the MCS-90 issue closely hidden until a point in time when (they believed) Lancer would not be able to respond.  They selected the process and the forum in which they would thrust the issue into the action.  In short, they planned the most propitious opportunity to disadvantage their adversary ... and it backfired. Having acknowledged that the facts were "undisputed", plaintiffs framed their MCS-90 argument on a record which established only that the underlying accident involved a school bus transporting school children on a purely local school bus run.

---

[15]    See Lancer's Exhibit "5" at p. 27.

The appellate courts summarily rejected plaintiffs' contention that the MCS-90 endorsement supported their request for judgment "as a matter of law", with the substantive ruling that this argument was "without merit".  Thereafter, in moving for permission to appeal further, plaintiffs again maintained that these "undisputed" facts were sufficient to trigger MCS-90 liability, but the Court of Appeals knew otherwise[16].

Nevertheless, having charted their litigation strategy, and having exercised their opportunity to litigate the MCS-90 issue before courts of competent jurisdiction, the plaintiffs cannot now contend that they were denied their day in court on this issue.  See *Antonious v. Muhammed,* 95 F. Supp.2d 156 (S.D.N.Y. 2000) [subsequent action dismissed on *res judicata* grounds, where the appellate division, in the earlier litigation, had ruled that claims raised on appeal were "without merit".]

Lest there be any residual hesitancy to appreciate the substantive nature of the Appellate Division's ruling in this respect, a recent decision provides additional guidance beyond that which was offered in Lancer's principal memorandum.  In *Mizell v. Bright Services, Inc.,* 38 A.D.3d 267, 832 N.Y.S.2d 14 (2d Dept. 2007), the court ruled that an issue raised for the first time on appeal was "not preserved" for appellate review; and that "in any event", it was *without merit*.  Clearly, the appellate courts in New York place substantive import to the phrase "without merit".

This Court must determine whether a New York court would dismiss this action in accordance with its doctrines of collateral estoppel or *res judicata*. *Antonious, supra.*  It is Lancer's belief, offered here most respectfully, that no New York court would permit the

---

[16]     See Lancer's Exhibits "7" and "8".

continuation of an action predicated on arguments which had been previously made, but summarily rejected.  Indeed, it is likely that no New York court would look kindly upon a collateral attack on the finality of one of its judgments.

## CONCLUSION

For all of the reasons set forth herein as well as in Lancer's principal memorandum, and on the basis of the exhibits, filings and pleadings of record either submitted or referenced herein, Lancer Insurance Company respectfully asks this Court to dismiss the within complaint in all respects, and grant such other and further relief as would be just and proper under the circumstances.

Respectfully submitted,

Roy W. Vasile (RWV - 7724)
*Attorney for Lancer Insurance Company*
Law Offices of Curtis, Vasile P.C.
2174 Hewlett Avenue, P.O. Box 801
Merrick, New York 11566

14



PLAINTIFF'S EXHIBIT
9-ID
11/20/08

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - x

THOMAS E. LYONS and CELESTE M. LYONS,

                  Plaintiffs,              STIPULATION

   -against-

T.F.D. BUS CO., INC.,                  Index #92-14941

                  Defendant.
- - - - - - - - - - - - - - - - - - - - x


      WHEREAS, plaintiffs, THOMAS E. LYONS and CELESTE M.

LYONS, appearing by their attorneys, EDWARD J. CARROLL, ESQ.,

and PIRRO, COLLIER, COHEN & HALPERN, L.L.P., and defendant,

T.F.D. BUS CO., INC., appearing by its attorneys, ADAM SEIDEN,

ESQ., and DOMINICK J. ROBUSTELLI, ESQ., are respectfully

plaintiffs and defendant in the above entitled civil action,

now pending in the Supreme Court, County of Westchester, State

of New York, bearing the above entitled Index Number, and

      WHEREAS, plaintiffs' complaint herein alleged that

defendant, T.F.D. BUS CO., INC., was negligent in the

operation of a motor vehicle which caused plaintiff, THOMAS E.

LYONS, to sustain serious permanent injuries for which he

sought compensatory damages, and plaintiff, CELESTE M. LYONS,

to sustain a loss of companionship and society of her husband,

THOMAS E. LYONS, for which she sought compensatory damages,

and

      WHEREAS, defendant, T.F.D. BUS CO., INC., had appeared by

its attorneys and interposed an answer, and

WHEREAS, plaintiff, THOMAS E. LYONS, obtained a jury verdict in the above entitled action on the 20th day of April, 1999, in his favor and against defendant, T.F.D. BUS CO., INC., in the sum of Two Million Four Hundred Thousand Dollars and 00/100 ($2,400,000.00) and plaintiff, CELESTE M. LYONS, obtained a jury verdict in the above entitled action on the 20th day of April, 1999, in her favor and against defendant, T.F.D. BUS CO., INC., in the sum of Two Hundred Thousand Dollars and 00/100 ($200,000) together with interest from the 17th day of December, 1992 (date of the judgment of liability), and the costs and disbursements incurred by plaintiffs, and

WHEREAS, the parties, through their respective counsel, for valuable consideration mutually exchanged, having agreed as follows:

1. Defendant, T.F.D. BUS CO., INC., must tender timely installment payments, which will be received, subject to collection. These payments will be first applied to the reduction of interest, and thereafter, to the reduction of principle due on plaintiffs' judgment. The first installment payment in the sum of $150,000.00 must be received by EDWARD J. CARROLL, ESQ., simultaneously with the return of this Stipulation, and thereafter, a quarterly payment will be due in the sum of $15,000.00 and must be received by EDWARD J. CARROLL on, or before September 1, 1999 and a like sum on the

2

first day of each and every third month thereafter must be received by EDWARD J. CARROLL, ESQ., until the judgment, together with interest to date of payment, and any award of costs and disbursements are paid in full by T.F.D. BUS CO., INC., and received by plaintiffs, subject to collection, but in no event shall said total sum exceed the sum of $5,000,000.00, which shall be the total maximum liability of T.F.D. BUS CO., INC. (without prejudice to the right of plaintiffs to seek any excess monies from Lancer Insurance Company), or a final judgment is reached, after any and all appeals, of the Lancer declaratory judgment, whichever occurs first.

(a) In the event a final judgment in the declaratory action is reached which determines that Lancer Insurance Company is estopped from disclaiming liability and/or coverage and is bound to indemnify their insureds and satisfy all judgments, awards, verdicts, and/or claims including interest, costs and disbursements set forth in Paragraph 2(a) and 2(b), our respective clients shall seek any recovery due from Lancer Insurance Company and plaintiffs, THOMAS E. LYONS and CELESTE M. LYONS, will credit defendant, T.F.D. BUS CO., INC., with any recovery obtained from Lancer towards the reduction of T.F.D. BUS CO., INC.'s liability concerning the maximum sum of $5,000,000.00 pertaining to the judgment which is being held in escrow pursuant to this

3

agreement.

(i) Plaintiffs agree that the maximum
amount of recovery that plaintiffs may obtain from T.F.D. BUS
CO., INC., individually, whether by judgment amount,
interests, costs and/or disbursements, is the sum of
$5,000,000.00. In the event plaintiffs recover the sum of
$5,000,000.00 or any greater amount, defendant, T.F.D. BUS
CO., INC., shall not be obligated to pay a deficiency
judgment, if any, due plaintiffs from Lancer Insurance Company
which may be recovered in excess of the sum of $5,000,000.00,
nor shall this provision bar or limit in any manner
plaintiffs' right to recover by judgment of otherwise a
greater amount than $5,000,000.00 from Lancer Insurance
Company.

(ii) Both plaintiffs and defendant agree
that the declaratory judgment action, now pending against
Lancer Insurance Company shall not be settled without the
other parties prior written approval. *Nothing in this paragraph shall apply to Celeste Crowe's claim for*

(b) In the event a final declaratory judgment
fails to obtain the relief sought in Paragraph 2(a) and 2(b)
herein, plaintiffs shall be entitled to seek a maximum
recovery not exceeding $5,000,000.00 against defendant, T.F.D.
BUS CO., INC., whether said recovery represents plaintiffs
judgment or any awarded interest, costs, and disbursements.

*Notwithstanding this provision plaintiff may settle their lawsuit against Lancer Insurance Co. at any time and in any amount, provided that plaintiffs provide TFD Bus Co, Inc. with a general release & from any further liability or their judgement & or claim*

(i) It is plaintiffs understanding that

*Thomas E. Lyons*        *Robt M. Rossi*    *vs*

T.F.D. Bus Co. Inc., is presently negotiating a three year contract with Mount Vernon School District and that the term of said contract is from approximately September, 1999 up to and including August 31, 2002. In the event that a final declaratory judgment is reached on or before August 31, 2002 which fails to obtain the relief sought in Paragraph 2(a) and 2(b) herein, providing that T.F.D BUS CO., INC. is not in default of any of the other terms of this agreement, plaintiffs will not enter or enforce their judgment until such time as that contract expires.

(ii) It is plaintiffs understanding that T.F.D. BUS CO. INC., is presently negotiating and/or under a contract with New Rochelle School District. In the event that a final declaratory judgment is reached, while this contract is in effect, which fails to obtain the relief sought in Paragraph 2(a) and 2(b) herein, providing that T.F.D. BUS CO., INC. is not in default of any of the other terms of this agreement, plaintiffs will not enter or enforce their judgment until such time as that contract expires.

2. T.F.D BUS CO., INC. must unconditionally waive any appeal(s) and consent to the execution of a judgment in the full amount awarded plaintiffs on April 20, 1999, together with interest from the date of the entry of the prior judgment of liability on December 17, 1992 and the costs and disbursements of this action. A copy of the proposed judgment

5

and bill of costs will be provided to counsel immediately. Notwithstanding the Court's execution of same, <u>this judgment will not be enforced, but instead will be held in escrow and not recorded, provided T.F.D. BUS CO., INC. is not in default of this agreement, until such time as a final disposition of the now pending declaratory judgment action has been reached</u> and any contracts set forth in paragraph 1(b)(i) and (ii) have expired.

Notwithstanding the foregoing, in the event T.F.D. BUS CO., INC. defaults in any term(s) herein, including but not limited to the timely tender of any required installment payment(s), then, in that event plaintiffs are authorized, without further notice or application, to record their judgment and seek full enforcement and recovery of same.

3.  Plaintiffs' agreement to stay the entry and execution of their judgment is made, without prejudice to, and with a reservation of rights, which will allow plaintiffs and defendant to diligently pursue and continue their respective claims against Lancer Insurance Company, or any other defendant(s) in a declaratory judgment action, now pending or in the future.

4. In the event plaintiffs obtain full recovery of their judgment from the pending declaratory judgment action against Lancer Insurance Company, then in that event T.F.D. BUS CO., INC. would be reimbursed for any monies previously

paid, after a deduction of plaintiffs' reasonable costs of the declaratory judgment litigation.

5. In order to protect their interests' pending execution, plaintiffs will require, and defendant, T.F.D. BUS CO., INC., agrees to provide a fully perfected security interest in all assets of T.F.D. BUS CO., INC. which will, at the option of plaintiffs, be insured by a title company. Defendant, T.F.D. BUS CO., INC., agrees to pay for any necessary title search of the defendant's assets to be conducted by the Title Service Company, 275 Fair Street Kingston, New York not to exceed the sum of $1,000.00. In lieu of an insured security interest, plaintiffs will accept a bond in the judgment amount if you prefer.

(a) Notwithstanding the right of the plaintiffs to enjoy a fully perfected first security interest on all of the assets of defendant, T.F.D. BUS CO., INC., as is set forth herein, T.F.D. BUS CO., INC., shall have the right, on 15 days written prior notice to plaintiffs counsel, EDWARD J. CARROLL, ESQ., to sell equipment, provided that the full proceeds of said sale, after the deduction of reasonable expenses associated with the sale, are utilized to purchase equipment, of equal or greater value, as needs occur.

(b) T.F.D. BUS CO., INC. agrees, within 30 days of the date of this stipulation, to provide plaintiffs with a sworn affidavit of its authorized officer, ADRIENNE GROCCIA,

in a form satisfactory to plaintiffs counsel, setting forth a representation that said affidavit is being provided to induce plaintiffs to enter into this agreement and that to the best of his belief and knowledge the following facts are true:

(i) Deponent is to set forth by make, model, year, and serial number sufficient to allow plaintiffs to acquire and perfect a security interest therein, each and every motor vehicle and/or equipment, having a value of $100.00 or greater, which is owned by the corporation, as of the date of this Stipulation;

(ii) Deponent is to set forth by make, model, year, and serial number, sufficient to allow plaintiffs to acquire and perfect a security interest therein, each and every motor vehicle and/or equipment having a value of $100.00 or greater, which is leased and/or possessed by the corporation, as of the date of this Stipulation;

(iii) Deponent is to set forth any secured interest claimed to be in existence as of the date of this stipulation which are either leased and/or owned by the corporation;

(iv) Deponent is to affirmatively allege that no assets having a value greater than $100.00 have been transferred within one year of this affidavit.

(v) A list of the corporation's creditor due monies in excess of $100.00 as of the date of this

stipulation and setting forth each and every such claim by amount, purpose, and creditor's name and address.

(vi) A current financial statement certified by the certified public accountant of the corporation setting forth its assets and liabilities.

(b)  Notwithstanding the foregoing, plaintiffs will agree to subordinate to the bonding company issuing a bond for the purpose of guaranteeing performance of any school contract, their foregoing security interests to the extent necessary to obtain such bonding.

THOMAS E. LYONS

CELESTE M. LYONS

T.F.D. BUS CO., INC.

By: ADRIENNE GROCCIA
Title: President

STATE   OF   NEW   YORK)
COUNTY OF            )ss.:

On this ___8th___ day of _____, 1999, before me personally came Thomas E. Lyons, to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that he executed the same.

Notary Public

EDWARD J. CARROLL
NOTARY PUBLIC, State of New York
Qualified in Ulster County
Commission Expires June 30, ___1999___

9

STATE OF NEW YORK      )
                       )ss.:
COUNTY OF NASSAU       )

PATRICIA FITZGERALD,  being duly sworn, deposes and says:

That deponent is not a party to the within action, is over eighteen (18) years of age and resides in Merrick, New York.

That on the 18th  day of January, 2008  deponent served the within

REPLY MEMORANDUM OF LAW

upon the following attorney(s) for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in post office box under the exclusive care and custody of the United States Postal Service within the State of New York.

TO:    Edward J. Carroll, Esq.
       Attorney for Plaintiffs
       2733 Route 209
       Kingston, NJ 12401
       By Mail and
       Fax: 914-338-5975

PATRICIA FITZGERALD

Sworn to before me this
18th day of January, 2008

NOTARY PUBLIC