UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THOMAS E. LYONS and CELESTE M. LYONS,

                     Plaintiffs,

   -v-

LANCER INSURANCE COMPANY,

                     Defendant.

Case No. 07-CV-7095 (KMK)

OPINION AND ORDER

---

Appearances:

Edward J. Carroll, III, Esq.
Law Office of Edward J. Carroll
Kingston, New York
*Counsel for Plaintiffs*

Roy W. Vasile, Esq.
Curtis, Vasile, Devine & McElhenny
Merrick, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      On August 9, 2007, Plaintiffs Thomas E. Lyons and Celeste M. Lyons ("Plaintiffs") commenced this action against Defendant Lancer Insurance Company ("Defendant" or "Lancer"), seeking a judgment under the federally-mandated MCS-90 endorsement to the liability insurance policy issued by Lancer to T.F.D. Bus Company, Inc. ("T.F.D."). Defendant filed a Motion to Dismiss Plaintiffs' Complaint on the grounds that the claims stated therein are barred by the doctrines of collateral estoppel and res judicata. For reasons set forth below, Defendant's Motion is denied.

I. Background

For purposes of the present Motion, the allegations set forth in Plaintiffs' Complaint are accepted as true, and all plausible inferences are drawn in Plaintiffs' favor. The Court has also reviewed documents incorporated in and annexed to the Complaint, as well as documents of which the Court may take judicial notice.

On February 14, 1989, Plaintiff Thomas Lyons sustained physical injuries in an automobile accident involving his car and a bus owned by T.F.D. and operated by Michael A. Thomas ("Thomas"), a bus driver employed by T.F.D. (Compl. ¶¶ 13-14.) At the time of the accident, T.F.D. had a liability insurance policy issued by Lancer, which included an MCS-90 endorsement. (*Id*. ¶¶ 11-12.)[1]

---

[1]Under the Bus Regulatory Reform Act of 1982 ("BRRA"), 49 U.S.C. § 31138, and regulations promulgated thereunder, an MCS-90 endorsement was required for the liability policy issued to T.F.D. by Lancer. *See Ins. Corp. of N.Y. v. Monroe Bus Corp.*, 491 F. Supp. 2d 430, 432 (S.D.N.Y. 2007) (describing MCS-90 endorsement as required by federal law). Pursuant to federal law, "an interstate motor carrier operating under a permit issued by the Secretary of Transportation must file a bond, insurance policy, or other type of security 'sufficient to pay, not more than the amount of the security, for each final judgment against the [carrier] for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of [its] motor vehicles.'" *Republic W. Ins. Co. v. Rockmore*, No. 02-CV-1569, 2005 WL 57284, at *9 (N.D. Tex. Jan. 10, 2005) (quoting 49 U.S.C. § 13906(a)(1)) (alterations in original). Interstate motor carriers are required to have an MCS-90 endorsement to their liability policies that evidences at least $5 million in liability insurance. *See id*. (citing 49 C.F.R. §§ 387.7(a), (d) and 387.9).
In pertinent part, the MCS-90 endorsement reads:

> [T]he insurer (the company) agrees to pay, within the limits of liability described herein, any final judgement recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles . . . . [N]o condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability

On August 27, 1992, Plaintiffs brought an action in the Supreme Court of the State of New York, County of Westchester, against T.F.D. and Thomas to recover damages for personal injuries sustained in the accident (hereinafter, the "Negligence Action"). (Compl. ¶ 16.) Upon the failure of T.F.D. and Thomas to answer or appear, Plaintiffs obtained a default judgment in their favor on December 17, 1992. (*Id.*, Ex. A ("Judgment"), 1-2, 5.) Following an inquest, Plaintiffs received a jury verdict in their favor on April 20, 1999, awarding them a total of $2,600,000 in damages. (*Id.*, Ex. A, 4-5.)

In the meantime, on March 24, 1999, Defendant Lancer commenced a declaratory judgment action in the Supreme Court of the State of New York, County of Nassau, seeking a judicial declaration that it had no duty to defend T.F.D. in connection with the February 14, 1989 accident or to indemnify T.F.D. for the money judgment Plaintiff obtained against it (hereinafter, the "Declaratory Judgment Action"). (*Id.* ¶ 15.) Following a jury verdict finding that Lancer had effectuated a timely disclaimer of coverage, the Supreme Court determined that, in connection with the February 14, 1989 accident, there was no coverage under the liability policy issued to T.F.D. by Lancer and that Lancer was not obligated to defend or indemnify T.F.D. or Thomas. (*Id.*, Ex. C, 1.)

Plaintiffs appealed the Supreme Court judgment obtained by Lancer to the Appellate Division, Second Department. Plaintiffs argued, inter alia, that pursuant to the MCS-90 endorsement, Lancer was required to pay the already "final" judgments obtained against T.F.D.

---

herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.

(Aff. in Opp'n of Edward J. Carroll ("Carroll Aff."), Ex. B, ("MCS-90").)

and Thomas. (Aff. in Supp. of Roy W. Vasile ("Vasile Aff."), Ex. 2, 43-45.) In response, Lancer argued that the Appellate Division should ignore Plaintiffs' MCS-90 argument because it was "never, ever . . raised at any time in any of the proceedings which have taken place during the pendency of this action[, and i]t is also an argument which has no substantiation in any aspect of the record which is before th[e Appellate Division]." (*Id*., Ex. 4, 19.) In their Reply Brief, Plaintiffs argued that "[a]ll of the facts in support of th[e MCS-90] issue were developed in the record and have not been contested by any party," and that the issue "raises no new or additional facts, involves the public interest, and should be reviewed by th[e Appellate Division]." (*Id*., Ex. 5, 25-27.) On May 2, 2005, the Appellate Division issued a Decision, affirming the judgment of the Supreme Court and finding Plaintiffs' "remaining contentions [to be] without merit." (Compl., Ex. C, 2-3.) Thereafter, Plaintiffs unsuccessfully moved for leave to appeal to the New York State Court of Appeals. (*Id*., Ex. D.)

Pursuant to an agreement between Plaintiffs and T.F.D., the entry of the judgment Plaintiffs obtained against T.F.D. was delayed until August 24, 2006. (*Id*. ¶ 16 & Ex. A, 5-6.) The judgment became final and enforceable on September 29, 2006, at which point Plaintiffs made an unsuccessful demand upon T.F.D. for payment. (*Id*. ¶ 17.) T.F.D. filed for bankruptcy protection and remains insolvent. (*Id*.) Thereafter, on March 29, 2007, Plaintiffs made a demand upon Lancer, as a statutory surety, to pay the judgment they obtained against T.F.D under the MCS-90 endorsement. (*Id*.) Lancer refused, and this lawsuit was commenced on August 9, 2007. (*Id*., Ex. F.)

On January 23, 2008, Defendant filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs' current claims are barred by the doctrines of

4

res judicata and collateral estoppel. More specifically, Defendant argues that: (1) Plaintiffs "argued this same issue in the prior [Declaratory Judgment A]ction, and that the facts underlying that issue were substantively resolved against them"; and (2) "the claim which is now being made should have been raised in the earlier [Declaratory Judgment A]ction, and the failure to preserve the claim at that time, if indeed there was such a failure, bars the current action." (Mem. of Law in Supp. of Def. Lancer Insurance Co.'s Mot. to Dismiss ("Def.'s Mem.") 2.)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted and second alteration in original). In *Twombly*, *see id.* at 1964-69, the Supreme Court abandoned reliance on the oft-cited line from *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." As the Court explained, a literal application of *Conley*'s "no set of facts" rationale is improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 127 S. Ct. at 1968 (alteration in original). Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the

5

speculative level," *id.* at 1965, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 1969. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. If Plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.*; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("After careful consideration of the Court's opinion and the conflicting signals from it that we have identified, we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." (emphasis in original)).

A Rule 12(b)(6) motion to dismiss requires a court to "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008); *accord Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996); *Blimpie Int'l, Inc. v. Blimpie of the Keys*, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y. 2005). "'In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Glidepath Holding B.V. v. Spherion Corp.*, No. 04-CV-9758, 2007 WL 2176072, at *10 (S.D.N.Y. July 26, 2007) (quoting *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)) (internal quotation marks omitted).

B. Analysis

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that "judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States . . . as they have . . . in the Courts of such State." *Fayer v. Town of Middlebury*, 258 F.3d 117, 123 (2d Cir. 2001) (alterations in original) (internal quotation marks omitted). The statute requires that federal courts "give the same preclusive effect to [the] state Court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Id.* at 124 (alteration in original) (internal quotation marks omitted); *accord Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007) (stating "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered" (internal quotation marks omitted)). Therefore, to determine whether Plaintiffs' present claim is precluded by the doctrine of collateral estoppel or res judicata, the Court looks to New York law.

1. Collateral Estoppel

"Under New York law, collateral estoppel will preclude a federal court from deciding an issue if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007) (internal quotation marks omitted); *accord Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003). Collateral estoppel only applies "if it is *quite clear* that these requirements have been satisfied, lest a party be precluded from obtaining at least one full hearing on his or her claim." *McKithen*, 481 F.3d at 105 (internal quotation marks omitted). "[C]ollateral estoppel will permit *any*

7

discrete factual issue necessarily decided in [a] prior action to be given preclusive effect, regardless of the overall legal context." *Lee v. Jones*, 659 N.Y.S.2d 549, 552 (App. Div. 1997).

Defendant argues that Plaintiffs' present claim is barred by the doctrine of collateral estoppel because Plaintiffs raised the issue of coverage under the MCS-90 endorsement to the Appellate Division, and the court decided the issue on substantive grounds in Defendant's favor, as evidenced by the court's statement that "[Plaintiffs'] remaining contentions are without merit." (Def.'s Mem. 7-9.) Moreover, Defendant argues that the MCS-90 endorsement is not independent from the policy to which it is attached, and that a judgment declaring that Lancer was not obligated to provide coverage pursuant to the underlying policy precludes an attempt to relitigate one of the policy's endorsements. (Def.'s Reply Mem. of Law ("Def.'s Reply") 3-4.) Plaintiffs respond that "[i]n the State action, the only issue litigated was the validity of the policy's coverage, not the enforceability of the MCS-90 endorsement." (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Mem.") 12.) Plaintiffs further argue that the MCS-90 endorsement was never raised in the Parties' pleadings or at trial in the Declaratory Judgment Action and that Plaintiffs only referred to the MCS-90 endorsement in the course of trying to convince the Appellate Division that Defendant's disclaimer of coverage was untimely and that there should be coverage under the policy. (*Id*. 11-12.) Therefore, according to Plaintiffs, "it cannot be found that plaintiffs have had ample prior opportunity to present the issues which now form the basis of the instant lawsuit." (*Id*. 13.)

Defendant correctly points out that, in order to invoke the collateral estoppel doctrine, a state court decision need not specifically mention a particular argument or explain its reasons for rejecting it; instead, an argument can be decided sub silentio. *See Dallio v. Spitzer*, 343 F.3d

553, 560 (2d Cir. 2003) (applying principle in habeas corpus context); *Parker v. Corbisiero*, 825 F. Supp. 49, 57 (S.D.N.Y. 1993) ("[A]n issue need not have been singled out in a decision for it to have been disposed of by the decision."). However, for collateral estoppel to apply, Defendant must demonstrate that it is "quite clear," *McKithen*, 481 F.3d at 105 (internal quotation marks omitted), that the Appellate Division decided the issue of Defendant's obligations under the MCS-90 endorsement.[2] The Court finds that Defendant fails in meeting this burden. Indeed, it is unclear whether the Appellate Division rejected Plaintiffs' invocation of the MCS-90 endorsement on the ground that it had not been preserved in the Supreme Court, or whether it rejected the idea that Defendant had to fulfill its obligations as surety to T.F.D. pursuant to the MCS-90 endorsement, independent of the underlying insurance policy, or on the determination that Defendant's obligations under the insurance policy could not be based on the scope of the MCS-90 endorsement.

Defendant insists that the Appellate Division's comment, at the end of its opinion, that it found Plaintiffs' "remaining contentions [to be] without merit," reflects a decision on the merits that bars Plaintiffs' case here, and not a decision based on waiver or any other procedural defect. Yet, the Second Circuit has found this type of language, typically found at the end of Appellate Division decisions, to be sufficiently ambiguous to bar the application of collateral estoppel. *See*

---

[2]The Court notes that the fact that Plaintiffs raised the issue of coverage under the MCS-90 endorsement in their motion for leave to appeal to the New York Court of Appeals (Vasile Aff., Ex. 7, 40-41), and that their motion was denied – without further comment (*Id.*, Ex. 8) – does not lead to the conclusion that the Court of Appeals decided the issue of MCS-90 coverage. *See Parker*, 825 F. Supp. at 57 ("[T]he [Court of Appeals]' action, in denying plaintiff leave to appeal without any comment, said nothing about the substance of plaintiff's claims. Thus, since the court's action cannot be said to have disposed of the issues plaintiff raises, plaintiff is not collaterally estopped from bringing any of his present claims by virtue of his prior attempt to appeal to the New York Court of Appeals.").

9

*Owens v. Treder*, 873 F.2d 604, 610-11 (2d Cir. 1989) (reviewing language rejecting remaining claims as "without merit," and concluding, "[s]ince we cannot tell the basis for the appellate division's affirmance, and since that court did not tell us, we must conclude that defendants have failed to establish one of the crucial requirements for collateral estoppel under New York law"). It may be, as Defendant asserts, that if the Appellate Division found Plaintiffs' argument to be procedurally barred, it would have explicitly said so.[3] However, there is no way to clearly divine that intent, and, in any event, it is possible that the Appellate Division rejected Plaintiffs' argument on the substantive ground that the applicability of the MCS-90 endorsement did not determine Defendant's obligations under the insurance policy itself.[4] In the end, therefore, this

---

[3] Of course, if one could interpret the Appellate Division's decision as based on the procedural ground that Plaintiffs had not preserved the MCS-90 issue below, then Defendant's collateral estoppel argument would not get to first base. *See Fuschsberg & Fuschsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002) (noting that under New York law, "if a court does not address an issue because it deems the argument on the issue to have been waived, then, for collateral estoppel purposes, the issue has not been decided").

[4] Defendant spends much energy trying to make the point that its obligations under the MCS-90 are not independent of its obligations under the policy. In fact, Defendant asserts that the judgment that relieved Defendant from coverage under the insurance policy itself bars Plaintiffs from alleging that Defendant has any obligations under the MCS-90 endorsement. This is a curious claim in light of the law that created the MCS-90 endorsement, and the cases that apply it.

The purpose behind the MCS-90 endorsement is to "ensure that a motor carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its operations." *Republic W. Ins. Co.*, 2005 WL 57284, at *9 (citing *Travelers Ins. Co. v. Transp. Ins. Co.*, 787 F.2d 1133, 1139 (7th Cir. 1986)); *accord Green v. Royal Indem. Co.*, No. 93-CV-4335, 1994 WL 267749, at *6 (S.D.N.Y. June 15, 1994) (noting that MCS-90 requirement seeks to ensure a monetary recovery by an injured party). "The MCS-90 endorsement is, in effect, suretyship by the insurance carrier to protect the public - a.k.a. a safety net. Thus, an insurer's responsibilities under the endorsement are triggered when the policy to which it is attached does not provide coverage to the insured." *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 442 n.4 (3d Cir. 2006) (internal citation omitted); *accord Real Legacy Assurance Co. v. Santori Trucking, Inc.*, 560 F. Supp. 2d 143, 146 (D.P.R. 2008) ("The endorsement is designed to protect the public, not the policyholder; the obligation the endorsement creates runs to the public, not to the insured. It seeks to ensure that ultimate

Court cannot conclude that it is "quite clear" that the issue of Defendant's obligations under the MCS-90 endorsement was necessarily decided by the New York courts.

### 2. Res Judicata

Under the doctrine of claim preclusion, or res judicata, "a valid final judgment bars future actions between the same parties on the same cause of action." *Parker v. Blauvelt Volunteer Fire Co.*, 712 N.E.2d 647, 649 (N.Y. 1999); *accord Landau v. LaRossa, Mitchell & Ross*, 892 N.E.2d 380, 383 (N.Y. 2008). Under New York law, a claim is precluded under the doctrine of res judicata if: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the

---

responsibility lies with the insured trucking company."). "[T]he public policy underpinnings of the endorsement[] shift[] the risk of loss in motor vehicle accidents involving [interstate motor carriers' vehicles] . . . by guaranteeing that an injured party will be compensated even if a condition in the liability policy would otherwise provide the insurance carrier with a valid defense." *Pierre v. Providence Wash. Ins. Co.*, 784 N.E.2d 52, 59 (N.Y. 2002).

Thus, contrary to the suggestion of Defendant, even if Defendant had no obligation to cover (or defend) T.F.D. under the insurance policy, it still might have an obligation under the endorsement to honor the judgment obtained by Plaintiffs. *See Green*, 1994 WL 267749, at *3 (rejecting insurer's claim that it was not bound by judgment for plaintiff because it did not participate in insured's defense). Indeed, the endorsement is not an insurance policy, *see Travelers Indem. Co. of Ill. v. W. Am. Specialized Transp. Co.*, 317 F. Supp. 2d 693, 698 (W.D. La. 2004) (noting that several circuits, including the Second Circuit, have "determined that the coverage provided pursuant to an MCS-90 Endorsement takes the form of a suretyship, rather than providing insurance coverage per se") (citing, inter alia, *In re Yale Exp. Sys., Inc.*, 362 F.2d 111, 114 (2d Cir. 1966)), but rather is a contractually-created surety for which Defendant may seek reimbursement, *see Real Legacy Assurance Co.*, 560 F. Supp. 2d at 147 (noting that the "endorsement carries with it a right to reimbursement"); *Green*, 1994 WL 267749, at *3 (noting that the surety obligation is not a product of New York law, but of the contractual terms in the obligation). Accordingly, Defendant may be obligated to compensate Plaintiffs "even if the [Defendant] has a valid defense based on a condition in the [insurance] policy," *Pierre*, 784 N.E.2d at 54.

11

subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (alterations in original) (internal quotation marks omitted).[5]

New York employs a "transactional approach" to res judicata, which means that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Parker*, 712 N.E.2d at 649-50 (internal quotation marks omitted); *accord McKithen*, 481 F.3d at 104. Under this approach, courts consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Feitshans v. Kahn*, No. 06-CV-2125, 2006 WL 2714706, at *3 (S.D.N.Y. Sept. 21, 2006) (internal quotation marks omitted). Under this analysis, "a variation in the facts alleged, legal theories asserted, or relief sought in the new pleading generally will not affect the result, because separately stated causes of action may nevertheless be grounded *on the same gravamen of the wrong* upon which the action is brought." *Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196, 201 (2d Cir. 2001) (emphasis in original) (internal quotation marks omitted). "An important limitation on the doctrine of res judicata, however, is that it does not apply 'if the initial forum did not have the power to award the full measure of relief sought in the later litigation.'" *Cowart v. Pico*, No. 95-CV-9069, 2000 WL 272308, at *2 (S.D.N.Y. Mar. 10, 2000) (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986)). This is true even where the later litigation "arises from the same factual circumstances as the initial action." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

---

[5]The first two elements do not appear to be in dispute for purposes of the present Motion. The Declaratory Judgment Action involved the same Parties as those involved in the present action. Further, neither Party takes the position that the state court litigation failed to adjudicate the Parties' claims on the merits, as opposed to on some procedural grounds.

The question here is whether the issue of coverage under the MCS-90 endorsement was – or could have been – raised in the Declaratory Judgment Action. Plaintiffs contend that they could not have pursued a claim for coverage under the MCS-90 endorsement during the Declaratory Judgment Action because certain prerequisites to such a claim had not yet been satisfied. (Pl.'s Mem. 8-11.) In particular, Plaintiffs argue that, in order to pursue a claim for coverage under the MCS-90 endorsement, the following prerequisites are required: (1) there must have been a final judicial determination that there was no coverage under the policy, which Plaintiffs claim did not occur until 2005, after the Appellate Division's decision in the Declaratory Judgment Action (*id*. 9);[6] and (2) a final judgment must have been entered against the insured – here, T.F.D or Thomas – which Plaintiffs allege did not become final and enforceable until 2006 (*id*. 10).[7] The MCS-90 endorsement reads: "the insurer (the company)

---

[6]The Court finds it unnecessary to spend much time on this argument. Plaintiffs cite to no authority supporting the proposition that a *judicial determination* of no coverage is required before an injured party may seek coverage under the MCS-90 endorsement. The plain language of the MCS-90 endorsement does not indicate that such a judicial determination is necessary. Further, the caselaw reviewed by the Court suggests that an insurer's disclaimer of coverage under the liability policy sometimes occurs before the MCS-90 endorsement can be invoked, but that a judicial determination of no coverage is not a prerequisite. *See Pierre*, 784 N.E.2d at 59-60 (granting summary judgment to injured parties and finding coverage under the MCS-90 endorsement after insurer disclaimed coverage under the liability policy without a judicial determination of no coverage); *Green*, 1994 WL 267749, at *6 (permitting injured party to pursue claim against insurer under the MCS-90 endorsement after insurer disclaimed coverage under the policy, though there was no prior judicial determination of no coverage).

[7]Annexed to Defendant's Reply Memorandum is a stipulation that appears to have been executed by Plaintiffs and the President of T.F.D. Defendants argue that this stipulation demonstrates that, although Plaintiffs may have waited until 2006 to enter the judgment against T.F.D., it was for all practical purposes final well before the Declaratory Judgment Action had run its course. (Def.'s Reply 10.) The Court, however, cannot consider the stipulation – a document neither mentioned, annexed to, or incorporated in Plaintiffs' Complaint – on this Motion to Dismiss. *See Glidepath Holding B.V.*, 2007 WL 2176072, at *10. Instead, the Court accepts as true Plaintiffs' allegation that a final judgment against T.F.D. did not occur until September 2006. (Compl. ¶ 17.) The Court recognizes that the judgment itself – of which the

13

agrees to pay, within the limits of liability described herein, any *final judgment* recovered against the insured for public liability resulting from negligence." (Carroll Aff., Ex. B.) Thus, "[t]he plain meaning of the endorsement requires *only* (1) a final judgment against the insured which (2) arises out of the negligent operation, maintenance or use of the motor vehicle." *Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc.*, 930 F.2d 258, 260-62 (2d Cir. 1991) (emphasis added); *see also Green*, 1994 WL 267749, at *3 ("The endorsement requires that [the insurer] pay 'any final judgment,' which plaintiff obtained when the New York state court entered final judgment on liability and damages."). Therefore, for purposes of this Motion, the Court finds that Plaintiffs could not have raised their MCS-90 endorsement claim in the prior proceedings because there was not a final judgment against T.F.D. or Thomas until 2006.[8] Without a final

---

Court may take judicial notice – indicates that the entry of the judgment was adjourned "by agreement between plaintiffs and . . . T.F.D.," (*Id.*, Ex. A, 5-6), but, without more detail about the agreement, the Court is unwilling to disregard Plaintiffs' allegation of when the judgment first became final.

The Court is aware, however, that there is some legal authority for the proposition that, in certain circumstances, a judgment need not be actually entered to be considered final. *See Feldstein v. N.Y. City Dep't of Consumer Affairs*, 804 F. Supp. 471, 474-75 (E.D.N.Y. 1992) (in collateral estoppel context, stating that "the final judgment requirement should be interpreted functionally" and finding final judgment "despite the absence of formal entry"). *But see Whalen v. Ansell Perry, Inc.*, No. 98-CV-0188, 2004 WL 840286, at *3 (S.D.N.Y. Apr. 16, 2004) (in collateral estoppel context, finding no final judgment because no judgment was entered following jury verdict). However, this issue is more appropriately dealt with on a motion for summary judgment or at trial, when both Parties will have the opportunity to submit evidence.

[8] Defendant asserts that the doctrine of judicial estoppel prevents Plaintiffs from claiming that final judgments were not entered until 2006 because Plaintiffs asserted to the Appellate Division that final judgments had been obtained against both T.F.D. and Thomas. (Def.'s Reply 8-9; Vasile Aff., Ex. 2, 43.) "The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding. A party invoking judicial estoppel must show that (1) another party advanced an inconsistent position in another proceeding and (2) the first tribunal adopted that position in some manner." *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 155 n.7 (2d Cir. 2007) (internal citations and quotation marks omitted); *see also Envtl. Concern, Inc. v.*

judgment against T.F.D. and Thomas, the Appellate Division – even if it were willing and able to consider a claim not even raised in the Supreme Court – could not have "award[ed] the full measure of relief sought in th[is] . . . litigation," *Cowart*, 2000 WL 272308, at *2 (internal quotation marks omitted). Therefore, Plaintiffs' current claim is not barred under the res judicata doctrine.

---

*Larchwood Constr. Corp.*, 476 N.Y.S.2d 175, 177 (App. Div. 1984) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." (internal citation and quotation marks omitted)).

  The Court will not disregard Plaintiffs' assertion that a final judgment was not obtained against T.F.D. and Thomas until 2006 on the ground of judicial estoppel, because there is no indication that Plaintiffs were successful in their assertion during the Declaratory Judgment Action or that the Appellate Division "adopted that position in some manner." *Troll Co.*, 483 F.3d at 155 n.7.

### III. Conclusion

For the reasons stated herein, Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied. The Clerk of Court is respectfully directed to terminate the Motion (Dkt. No. 8).

SO ORDERED.

Dated:  September 30, 2008
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List:

By ECF:

Edward J. Carroll, III, Esq.
Law Office of Edward J. Carroll
2733 Route 209
Kingston, NY 12401
Email: eclaw@hvi.net
*Counsel for Plaintiffs*

Roy W. Vasile, Esq.
Curtis, Vasile, Devine & McElhenny
2174 Hewlett Avenue
P.O. Box 801
Merrick, NY 11566
Email: rvasile@cvdm.com
*Counsel for Defendant*